**People of the State of Illinois, Appellee, v. Willie A. Nevith (Impleaded), Appellant.**

**Gen. No. 52,743.**

First District, First Division.

November 25, 1968.

Edward E. Yalowitz, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Theodore A. Shapero, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

The defendant, Willie A. Nevith, was charged with committing the offense of robbery in violation of section 18–1 of the Criminal Code (Ill Rev Stats 1967, c 38, § 18–1). He pleaded not guilty, waived a jury trial, and upon being found guilty was sentenced to a term in the state penitentiary of not less than one year or more than eight years.

The defendant filed a direct appeal to the Illinois Supreme Court and that Court transferred the case to this Appellate district. On appeal, the defendant contends that "the evidence was not sufficient to sustain the verdict" and that he "was deprived of a fair trial in that he was represented by incompetent trial counsel."

A summary of the evidence is necessary in order to determine whether there was sufficient evidence to sustain the defendant's conviction. The record reveals that the complaining witness, Fortunata Stalica, was walking on Dickens Avenue near California Avenue on her way home at 11:00 a. m. on January 14, 1963, when two men tried to force her into a car parked half in and half out of an alley. One of the men pushed her against the wall and the other man pressed a "fork" against her

face and took her purse containing $15 and some other articles. Mrs. Stalica testified that the two men were in her presence for three or four minutes in which time both men were very close to her. In fact, she said that she first noticed the men when "[w]e were just face to face." She described the men to the police as wearing "regular army clothes—brown Eisenhower jackets. . . ." She said that they got into a green car, which was more or less like junk, and drove off. On cross-examination she testified that she told the police that the two men were about her height and young. She did not remember whether she told the police the make of their car. Mrs. Stalica then testified that after the robbery she drove around the neighborhood with the police in an unsuccessful attempt to find the men. That afternoon, however, she saw the two men at the police station and she identified the defendant and his codefendant, Nathaniel Burr, as the men who had robbed her. She testified that she did not remember the color of the jacket that defendant Nevith was wearing at the police station, but that defendant Burr's jacket was brown.

Police Officer Chester Soral testified that he drove the complaining witness around the vicinity of the robbery in an attempt to identify the type of car used by the men who robbed her. The officer said that "she pointed out a car—the type that we are supposed to be looking for, which was a green car." At 1:45 p. m. the same day of the robbery, Officer Soral testified that he saw a "1953 Chevy, green color—the dirty car I was looking for" about a mile from the scene of the robbery. He called for extra police help and later observed that the two occupants of the car were wearing army clothes and Eisenhower jackets. He identified the two men he saw in the car as the defendants. Officer Soral then stated that both men were identified by the victim shortly thereafter in the police station. On cross-examination he testified that the police neither found any money nor

the "fork" in the possession of the defendants. He also said that both defendants denied being the robbers.

Four witnesses testified to the whereabouts of the defendants on the day in question. J. T. Sherrod, who had a used tire shop, testified that he knew both defendants and that he saw them pass his shop about 8:15 a. m. At 12:00 p. m. he stated that he saw them in a tavern owned by Joseph Nadler.

Willie Littlejohn testified that some time between 12:00 and 1:00 p. m. he saw the defendants in Nadler's tavern. He said that he gave them $2.50 to get him some oil and that he also gave them $1 extra to get themselves some gasoline. Mr. Littlejohn said that they did not return.

James Green testified that he knew Nathaniel Burr, the codefendant, all of his life and that he knew Nevith about five years. He stated that he saw the codefendant, Burr, standing outside Nadler's tavern about 10:45 a. m. and that both he and Burr were inside the tavern at 11:00 a. m. When Mr. Green left the tavern at about 12:00 p. m., he said both defendants were still inside the tavern.

Joseph Nadler testified that he was the owner of a tavern at 2200 West Division Street. He stated that he had known the defendants since he had opened his tavern six months before. Mr. Nadler said he saw the defendants in his tavern from 9:00 or 9:30 a. m. to at least five minutes before noon when he left to go to the bank. On cross-examination he said the defendants "were dressed in working clothes. I wouldn't say Army ciothes."

The defendant, Willie A. Nevith, testified on his own behalf that he was twenty-two and unemployed. In 1958 he was convicted of burglary. He said that he met Burr, his codefendant, at 7:30 a. m. and went to the tire shop. They then went to Nadler's tavern arriving there about 9:00 a. m. Nevith said that they stayed there until

411

12:45 p. m. They then drove to a Clark station and were arrested while buying gasoline for their 1953 Chevrolet. The defendant said the officers arrested him because he did not have a city sticker. At the station he said that the police officers told them they were looking for a green 1954 Buick. The defendant also said he had on a pair of green pants and a short green Eisenhower jacket. Burr, the defendant stated, had on a brown army coat—an Eisenhower jacket. The defendant denied that he and Burr had robbed the complainant.

The State offered into evidence a certified copy of a conviction of Willie Nevith for plain robbery in 1958. A stipulation was entered into by the parties that if Detective Eugene Kalmowski were called he would testify that he had a conversation with Nadler on January 14, 1963, and the witness told him that the two defendants were in the tavern that morning, but that they were in and out.

The defendant, Willie Nevith, contends that his conviction rested solely upon the identification of the complaining witness and that this identification was insufficient to sustain the verdict. He argues that when he was arrested he was wearing a green Eisenhower jacket, green army fatigue pants and a brown hat, whereas the complaining witness testified that the men who robbed her were wearing brown Eisenhower jackets. Also, the defendant said that when he was arrested, the police officers were looking for a 1954 green Buick. We must note that this latter testimony was given by the defendant and was not corroborated. It was also his uncorroborated testimony that the complaining witness could not remember much about what she told the police officers after the crime was committed and that she had not picked him out of a lineup.

A somewhat similar situation existed in People v. McCall, 29 Ill2d 292, 194 NE2d 222. In that case the complaining witness, whose purse was snatched about

8:50 p. m., testified that she observed the robber for three to five minutes in a well lighted area. Her identification of the defendant at the police station one hour after the robbery was positive. The Court held there that the fact the identification was made by only one witness and that the defendant was not with a group of men when viewed by the complaining witness at the police station did not destroy the credibility of her identification. "The fact that she was unable to tell the color or model of the car in which the robber drove away or the car's license number only goes to the weight to be given her testimony." In the case at bar the victim gave an adequate description of the robber's wearing apparel, the car they drove, and positively identified the defendants three hours after the robbery and again at the trial. After a careful examination of the record we cannot say that the conclusion of the trial court was unwarranted. While the testimony of the witnesses for the defendant tend to establish an alibi, it was within the trial court's province to disbelieve it. We find no reason to disturb the trial court's finding of guilty.

The defendant also contends that the public defender appointed by the court to represent him committed the following two serious errors: he stipulated to the testimony of Detective Kalmowski thereby losing the right to cross-examine; and he commenced trial on April 19, 1963, knowing that at least one witness was unavailable that day. The record shows that at the close of the State's case and after the testimony of defendants' witnesses Sherrod, Littlejohn, and Green, on April 19, the public defender stated that he had one more witness, a Mr. Nadler. The court replied "I have already indicated that I would recess this trial until you can bring him in." On the statement by the public defender that he could not bring Nadler in on the following Monday the matter was continued for a week to April 26. Thus, the record clearly shows that the trial court al-

413

lowed the defense time to bring their witness into court removing any prejudice to the defendant that might have arisen when the public defender commenced trial before Mr. Nadler was available to testify.

■ On April 26, 1963, the public defender answered that he was ready to proceed and the State advised the court that their rebuttal witness was sick and not present. After Joseph Nadler told the court that he was not a well man and had just gotten out of the hospital, the public defender stated that "[i]f the court would proceed and finish our side of the case, then, if you want, you could put it over for rebuttal." The public defender stated further that he would not object to a continuance to bring in the rebuttal witness "as long as they were nice enough to give me time." At the close of the defendants' case the respective counsel entered into the stipulation complained of by the defendant Willie Nevith. We have found nothing in the record to indicate that the defendant was prejudiced by the stipulation. On the contrary, we are of the opinion that the defendant was ably represented. As a matter of trial tactics, defense counsel evidently believed he could gain nothing by cross-examining the rebuttal witness and relied on the testimony of Nadler and the defendant. The stipulation is not unusual in such circumstances, particularly when the case is heard by the court. The stipulation does not show inadequate assistance of counsel. People v. Williams, 36 Ill2d 194, 222 NE2d 321.

■ ■ ]It is well settled that a review of appointed counsel's competence does not extend to those areas involving exercise of judgment, discretion or trial tactics. People v. Wesley, 30 Ill2d 131, 136, 195 NE2d 708. This is true even though appellate counsel might have acted in a different manner. It was a matter of judgment and it has been held that a mere error of judgment does not amount to incompetence of counsel. People v. Palmer, 27 Ill2d 311, 189 NE2d 265.

414

The judgment of the Criminal Court division of the Circuit Court is affirmed.

Affirmed.

ADESKO and MURPHY, JJ., concur.