**People of the State of Illinois, Plaintiff-Appellee, v. Charles Van Dyke, Defendant-Appellant.**

Gen. Nos. 68–89, 68–90.

Second District.

February 28, 1969.

John O. Vogel, Deputy Public Defender, of Wheaton, for appellant.

William V. Hopf, State's Attorney of DuPage County, of Wheaton, and Helen Kenney, Assistant State's Attorney, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

The sole issue on this appeal is whether "Under all the circumstances disclosed in the record . . . the defendant was adequately represented by counsel."

In the latter part of July, 1967, the defendant, Charles Van Dyke, was charged with various sexual offenses. He was unable to make bail and, consequently, remained in jail. Prior to indictment, he retained Carl Kuhn (herein called Kuhn) as private counsel, to represent him. Kuhn, and attorney John Lang (herein called Lang),

who filed an appearance on behalf of the defendant, filed three petitions for a writ of habeas corpus, seeking his release, and Lang acted as trial counsel on his behalf.

In Circuit Court cause number 67–1899 G, the defendant was indicted for indecent liberties with a child, Barbara Godenius. This case was tried before a jury on November 14, 1967. Lang called no witnesses on behalf of the defendant, but did attack the weaknesses of the People's case. The jury returned a not guilty verdict.

On November 21, 1967, a jury returned a verdict finding the defendant guilty in cause number 67–2526 G. The information in this cause contained two counts. Count I charged the defendant with contributing to the sexual delinquency of Rebel Rayboss, a minor; and Count II made the same charge with reference to Mary Anne Van Dyke, the minor daughter of the defendant.

The defendant was also indicted, in Circuit Court cause number 67–1898 G, for indecent liberties and aggravated incest with said Mary Anne Van Dyke. This case was heard before a jury which rendered a verdict of guilty on November 22, 1967.

Lang, who also acted as the defendant's trial counsel in the two cases wherein guilty verdicts were returned, followed the same tactical procedures therein as he had used in the jury trial wherein the not guilty verdict was returned.

In Circuit Court cause number 67–1898 G, the defendant was sentenced to serve not less than 6 nor more than 12 years at the State Pentitentiary at Joliet; and in cause number 67–2526 G, he was sentenced to serve 1 year at said penitentiary, this sentence to be served concurrently with that in cause number 67–1898 G.

In each case wherein a jury verdict of guilty was returned, Lang moved for a mistrial; filed a motion for a directed verdict at the close of the People's case; submitted adequate instructions on behalf of the defendant; fully argued the case to the jury; filed a comprehensive

motion in arrest of, and to vacate, the judgment; and filed motion for new trial. He fully argued the post-trial motions, offered numerous citations in support of the motions and appeared for the defendant at the hearing in aggravation and mitigation in each case. After sentence in cause number 67–1898 G, the defendant asked for an appeal, and the court appointed Lang to represent him therein.

After the hearing in aggravation and mitigation in cause number 67–2526 G and the pronouncement of sentence, the defendant addressed the court and made a long and rambling statement wherein he stated that Kuhn, his lawyer, came to the jail to get his money but never came back; that neither Kuhn nor Lang visited him in jail to learn about his case; that the facts were not brought out during the trial; that he was innocent; that his wife and Mrs. Rayboss lied on the witness stand and told Mary Anne Van Dyke and Rebel Rayboss what to say, as witnesses; that his wife's boyfriend had coached Mary Anne; that his present wife and his first wife were both unfaithful to him, and his present wife framed him; that his attorneys would not let his mother testify, and her testimony would have helped to clear him; and that his counsel would not let him take the stand.

In reply to the defendant's statement, Lang stated that he and Kuhn brought the defendant's mother to court during the trials, but concluded not to call her as a witness; that they knew what they were doing when they "didn't put her on the stand."

At the hearing in aggravation and mitigation in cause number 67–1898 G, it was brought out that the defendant was indicted in Cook County in 1956 for contributing to the delinquency of a minor; that he entered a plea of guilty to such charge; and that he was granted probation.

The trial judge, before whom the two cases (wherein the jury rendered verdicts of guilty) were tried, remarked that the defendant had been well represented at the trial, and that Lang's conduct at the trials indicated that he had spent "a lot of time" in planning his defense. Even after the defendant made the statement, Lang represented him at the aggravation and mitigation hearing and argued in mitigation of the offense. After sentence, the defendant said he would like to have Lang represent him on appeal. Lang offered to do so, and was appointed by the court to prosecute the appeal.

The common-law record reflects a letter dated March 8, 1968, from the defendant, addressed to the clerk, inquiring re the status of his appeals. On March 26, 1968, the court entered an order appointing the Public Defender of DuPage County to represent the defendant. The record is silent with reference to why Lang did not perfect the appeals. In this court, the appeals were consolidated for argument and opinion, and brief and excerpts were filed on behalf of the defendant by the Public Defender.

Under the circumstances herein related, it is obvious that the written post-trial motions prepared by Lang would not specify inadequacy of counsel as a basis for post-trial relief. Section 116–1 of the Code of Criminal Procedure of 1967, which was in effect at the time of the defendant's trial, requires that motions for a new trial in a criminal case shall be in writing and shall specify the grounds therefor. (Ill Rev Stats 1967, c 38, par 116–1.)

██ ██ Under the doctrine of the People v. Flynn, 8 Ill2d 116, 118, 119, 133 NE2d 257 (1956), if the party seeking a new trial files a written motion specifying the grounds relied on therein, he is confined on review to the reasons specified in the trial court; however, if such party makes a nonspecific oral motion for new trial, which

is not objected to by the State, then all issues may be raised on review. Also see: People v. Whitehead, 35 Ill2d 501, 503, 504, 221 NE2d 256 (1966). However, Supreme Court Rules 615(a) provides that errors or defects affecting substantial rights may be considered on appeal although they were not brought to the attention of the trial court. Also see: People v. Burson, 11 Ill2d 360, 371, 143 NE2d 239 (1957). Consequently, we will consider the issue of inadequacy of counsel.

In People v. Morris, 3 Ill2d 437, 121 NE2d 810 (1954), at pages 444 and 445, the court stated:

> "Where the defendant selects his own attorney the court has held, almost without exception, that the failure of such counsel to exercise care and skill in the trial of the case does not afford a basis for reversing a judgment of conviction. (Citations.)
>
> "In People v. Pierce, 387 Ill 608, it was said at page 615: 'Pierce employed his own counsel in the court below. The record does not disclose that he was either incompetent or remiss in performing his duty toward plaintiff in error. But even if it were otherwise, plaintiff in error's contention that he was poorly represented at the trial would be of no legal moment, as his attorney was of his own choosing.' To the same general effect is a recent Post-Conviction Hearing Act case, Mitchell v. People, 411 Ill 407. In holding that the petitioner was not denied due process of law by reason of the alleged incompetency of his trial attorneys, this court said at page 407–8: 'Ordinarily, a defendant who retains counsel of his own selection is responsible if that counsel does not faithfully serve his interests. Any other rule would put a premium upon pretended incompetency of counsel; for, if the rule were otherwise, a lawyer with a desperate case would have only to neglect it in order to ensure reversal or vacation of the conviction.' "

416

Also see: People v. Nordstrom, 73 Ill App2d 168, 182, 183, 219 NE2d 151 (1966).

In Morris, at page 443, the court stated:

"The conduct of counsel in a criminal trial in a State court may be such as to amount to the defendant being deprived of due process of law in violation of the fourteenth amendment of the Federal constitution. It has been established that the assistance of counsel may, under certain circumstances, be an essential element of due process. Since Powell v. Alabama, 287 US 45, decided in 1932, this general question has been considered many times. See, for example: White v. Ragen, 324 US 760, 763–4; Wade v. Mayo, 334 US 672; Tompsett v. Ohio, 146 F2d 95, 98; United States ex rel. Hall v. Ragen, 60 F Supp 820; Coates v. Lawrence, 46 F Supp 414, 421–2; Wilson v. State, 222 Ind 63, 79–82."

It is, thus, apparent that the issue of inadequacy of counsel could have been the alleged error in a petition under the Post-Conviction Hearing Act, grounded on the constitutional issue of deprivation of due process of law. An appeal from the order entered on such petition would be directly to the Supreme Court. (Ill Rev Stats 1967, c 38, pars 122–1 to 122–7 incl.; art VI, Ill Const 1870, § 5.) Such fact, however, does not necessarily preclude us from deciding this case, in that Supreme Court Rule 365 (Ill Rev Stats 1967, c 110A, par 365) provides that a matter decided by either the Supreme or Appellate Court shall not be subject to collateral attack on the ground that it should have been decided by the other court.

Also, it is questionable herein whether the constitutional issue is of such substantial nature as to require a decision by the Supreme Court. See: First Nat. Bank & Trust Co. v. Evanston, 30 Ill2d 479, 481–486, 197 NE 2d 705 (1964). Consequently, we will treat this case as

one wherein a constitutional question is raised which lies within the penumbral area wherein either this court or the Supreme Court has appellate jurisdiction. People v. Valentine, 60 Ill App2d 339, 348, 349, 208 NE2d 595 (1965).

The Public Defender has urged that the evidence produced by the People was introduced by means of leading questions; that the defendant's private counsel never visited him at the jail in order to obtain information to assist in investigating the charges on his behalf; and that inadequate objection was raised by the defendant's private counsel as to the competency of Mary Anne Van Dyke and Rebel Rayboss, each aged 9, to testify.

The record herein indicates that prior to trial, Lang interviewed the child victims and others, who were called as witnesses for the People; that his acts in this respect were reported to the State's Attorney's office; and that he caused timely orders to be entered in each case for the psychiatric examination of the defendant. At the trial of the cases, he interjected Mrs. Van Dyke's acquaintance with Joe Mize—her alleged boyfriend—and inferred therefrom, an evil motive in connection with Mrs. Van Dyke's acts in causing criminal charges to be preferred against the defendant. He referred to Mrs. Van Dyke's pending divorce proceeding to buttress the inference.

The propriety of objecting to leading questions asked by the People and the advisability of making a strenuous objection to the competency of Mary Anne Van Dyke and Rebel Rayboss, a witness, involved an area of judgment, tactical in nature, which could well have been decided differently by any given number of capable trial lawyers.

In People v. Washington, 41 Ill2d 16, 241 NE2d 425 (1968), at page 428, the court stated:

"An error in judgment alone does not amount to incompetency of counsel . . . and the fact that the

418

same warrant involved in this case was quashed upon motion in the case of Mary Canady does not prove that the representation provided Washington sank so low as to violate his constitutional right to counsel. '(T)he fact that some other lawyer followed a different course in another case, or would have done differently had he been acting as counsel, is no ground for branding the appointed attorney with the opprobrium of ineffectiveness, or infidelity, or incompetency. The practice of law is an art as well as a science. As no two men can be exactly alike in the practice of the profession, it is basically unreasonable to judge an attorney by what another would have done, or says he would have done, in the better light of hindsight. Scott v. United States, (6 Cir, 1964), 334 F2d 72, cert den 379 US 842, 84 S Ct 81, 13 L Ed2d 48.' (Williams v. Beto (5th cir), 354 F2d 698, 706.) . . .

"Where a defendant selects his own attorney this court has held 'almost without exception, that the failure of such counsel to exercise care and skill in the trial of the case does not afford a basis for reversing a judgment of conviction.' (People v. Morris, 3 Ill2d 437, 444, 121 NE2d 810, 815.) A standard for determining incompetency which we have often cited (People v. Clark, 7 Ill2d 163, 168, 130 NE2d 195; People v. Stephens, 6 Ill2d 257, 259, 128 NE2d 731; People v. Reeves, 412 Ill 555, 562–563, 107 NE2d 861) was set out by the United States Seventh Circuit Court of Appeals: 'If the action of counsel in the presence of the court in the conduct of the trial reduces the trial to a travesty on justice, such conduct might be considered on the proposition that such a trial was a denial of due process. The conduct of counsel in the trial of a case is that of only one of the officers of the court whose duty it is to see that the defendant receives a fair trial. He

is only one of the actors in the drama. The best of counsel makes mistakes. His mistakes, although indicative of lack of skill or even incompetency, will not vitiate the trial unless on the whole the representation is of such low caliber as to amount to no representation and to reduce the trial to a farce.' United States ex rel. Feeley v. Ragen (7th cir), 166 F2d 976, 980–981; see also People v. Strader, 23 Ill2d 13, 177 NE2d 126; People v. Pride, 16 Ill2d 82, 156 NE2d 551; Mitchell v. People, 411 Ill 407, 104 NE2d 285; People v. Clifton, 408 Ill 475, 97 NE2d 298."

▪ The most that can be said of the alleged inadequacies of counsel in the case at bar is that he may have erred in his judgment in certain respects. However, he was counsel of defendant's own choosing, and such inadequacies neither deprived the defendant of a fair trial nor established such conduct of counsel as might be considered to sustain the proposition that the defendant's trial was a denial of due process.

Accordingly, the judgment herein is affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and SEIDENFELD, J., concur.