THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARCIANO COLON, Defendant-Appellant.

(No. 55848;

First District—January 23, 1973.

Harvey J. Powers, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Robert C. Samko, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

Defendant was charged with unlawful possession of a narcotic drug. A jury found him guilty and the trial court, after overruling post-trial motions and hearing evidence in mitigation and aggravation, sentenced him to serve five to ten years. In this appeal, defendant presents seven issues. These issues are raised from the following facts.

At about 4:00 P.M. on March 19, 1968, three Chicago policemen, Michael Capesius, Orlando Bellini and John Thompson were on patrol. They were in civilian dress and in an unmarked police vehicle. At Erie and La Salle Streets, the officers saw a car with its city license sticker improperly attached to the windshield. They pulled alongside and requested the man driving the car to stop at a nearby curb. He did and then bolted from his vehicle and ran diagonally across the street. The officers gave chase. They saw the man reach into his coat pocket, take out a tinfoil package and drop it to the ground. Officers Capesius, who was near, picked it up. The other officers ran after the man and caught him. It was the defendant, Marciano Colon. The contents of the package were field-tested and found to contain an opium derivative, heroin. Defendant was arrested and later indicted.

To represent him in his trial, defendant employed Thomas J. Maloney of the Chicago Bar. Mr. Maloney filed his appearance. On the day that the case was called, defendant appeared with another lawyer, Mr. Joseph A. Malek. Mr. Malek told the trial judge that Mr. Maloney was occupied in a Federal case. When the prospective jurors were given their preliminary orientation, Mr. Malek was introduced as defendant's counsel with the comment that "the defendant is also represented by Mr. Thomas Maloney, who will be here directly."

The first panel of the jury was selected. Then, the case was continued until two days later at 10:15 A.M. When court convened at the appointed time, defendant was not present. Instead, a young woman re-

sponded and said that she had a note from him. It read, "Judge Wilson, I'm unable to attend court because of illness. Will you please set another court date for me at this date. Thank you. Marciano Colon." After reading the note, the trial judge said that he was going to wait for defendant's lawyers. He told the young woman, however, that if she could reach the defendant, to tell him the case was going to proceed without him. Mr. Maloney arrived a short time later and said he had not known of defendant's absence. After a colloquy with the lawyers, the judge ruled that selection of the jury was to proceed but "* * * if the defense counsel can indicate to the Court that they will have their man in Court tomorrow morning we could recess until that time, otherwise we will go right into the trial this afternoon [sic]." Mr. Maloney moved for a mistrial because of defendant's absence. The motion was denied.

Selection of the jury was completed. The next day, before opening statements were made, Mr. Malek called attention to an earlier request he had made for leave to file motions. He told the court he wanted to file a motion to suppress evidence. The trial judge ruled that the motion could be filed "* * * and it will be heard during the course of the trial; and if the Court sees fit that we have to have a hearing in chambers with reference to this, we will go into chambers. But I am not going to hold at this time a separate hearing on the Motion to Suppress, because you answered ready for trial and the jury was brought up to this courtroom."

The trial then proceeded in defendant's absence. The three police officers testified for the prosecution. In addition, a crime laboratory technician described how he tested and determined the presence of heroin in the contents of the package which defendant dropped before he was arrested. Later, one of the officers was called as the defendant's only witness. After his testimony, summations were made, instructions were given, the case was submitted and the jury returned its verdict of guilty.

The first issue is whether in the trial of his case, defendant was represented by counsel of his choice. This issue is fashioned from a claim, now asserted through another lawyer, that Mr. Joseph A. Malek, who handled most of the defense, was not the lawyer of defendant's choice.

The record before us reveals that on the day of his trial defendant appeared in court with Mr. Malek. At one point of the proceedings, defendant was told to stand so that the prospective jurors could see him. Mr. Malek was then introduced as his lawyer. Defendant made no objection. Later, on defendant's behalf, Mr. Malek requested a conference with the court. Defendant was informed of this request and again he made no objection. It is true that Mr. Malek did not file a formal appearance as

defendant's lawyer, but the record shows that he was an associate of Mr. Maloney who had. Throughout the trial, in defendant's absence, Mr. Malek handled the defense either alone or with Mr. Maloney. It was Mr. Malek who raised the objections, participated in the conference on instructions, argued the case to the jury and made a courageous effort to explain defendant's absence from the trial.

Mr. Malek made and argued post-trial motions; and when these were overruled, he urged the trial court to consider factors which he thought mitigated the offense. Three days later, when defendant was brought into court under arrest, Mr. Malek was there. He made, and the court allowed, a motion to vacate the sentence and consider additional evidence in mitigation and aggravation of the offense. At no time ,from the day he first appeared in court to the last one when sentence was imposed, did defendant say anything to suggest that Mr. Malek was not his lawyer.

██ The right to counsel guaranteed by the sixth and fourteenth amendments to the Federal constitution and by section 9, article II of the constitution of Illinois, includes the right to be represented by counsel of one's choice. (*People v. Inniss*, 1 Ill.App.3d 531, 532, 275 N.E.2d 218; compare *People v. MacArthur*, 2 Ill.App.3d 1077, 278 N.E.2d 530.) In this case, it clearly appears that defendant exercised this right when, without any expression to the contrary, he appeared with Mr. Malek in court and treated him as his lawyer. Therefore, in his trial, defendant was represented by counsel of his choice. *People v. Coleman*, 9 Ill.App.3d 402, 292 N.E.2d 483; *People v. Novotny*, 41 Ill.2d 401, 244 N.E.2d 182; compare *People v. Sailor*, 43 Ill.2d 256, 253 N.E.2d 397.

The second issue is whether defendant was denied due process of law when the principal part of his trial was held in his absence. This issue is derived from the fact that most of defendant's trial proceeded without him.

On February 11, 1969 when defendant's case was called for trial, he was present. On February 13, 1969 at 10:15 A.M. when his trial resumed, he was absent. Instead, defendant sent a note to the judge saying that he was ill. He did not explain the nature of the illness. His lawyers did not know why he was absent. The next day, the trial judge inquired of defendant's lawyers and learned that their efforts to contact him were fruitless. Then, at the assistant State's Attorney's request, the trial court put into the record defendant's note of the day before and his bond. In comparing the handwriting on the two, the judge found that they differed; he observed that defendant's lawyers had no additional evidence of his incapacity or illness nor did they know the reason for his absence from

the trial, even though defendant had been given an opportunity during recess of court to appear. Based on these findings, the court ruled that defendant's absence was voluntary, that he had waived his right to be present and that the trial should proceed without him. Defendant contends that this ruling deprived him of due process of law.

■■ The constitutional right of a defendant to appear in person and by counsel in his criminal case is conferred for his protection, but, like many other rights, it may be waived by him. (*Sahlinger, et al. v. People,* 102 Ill. 241, 246.) Generally, the trial of a felony defendant cannot proceed without his presence; but when he is at liberty on bail and voluntarily absents himself from his trial, after it has begun, he waives the right to be present and the court can proceed without him. *People v. Connors,* 413 Ill. 386, 108 N.E.2d 774; *Commonwealth v. Flemmi* (1971), (Mass.), 277 N.E.2d 523; *State v. Turner* (1971), 11 N.C.App. 670, 182 S.E.2d 244.

■■ In the case before us, the record reveals that defendant voluntarily absented himself from his trial. For this reason, we conclude that the trial court acted correctly when it ruled that defendant's trial could proceed without him. Therefore, defendant was not denied due process of law because the principal part of his trial was held in his absence. See *People v. Trice,* 127 Ill.App.2d 310, 262 N.E.2d 276; compare *State v. Tacon* (1971), 107 Ariz. 353, 488 P.2d 973, *cert.* granted, 407 U.S. 909, 32 L.Ed.2d 682, 92 S.Ct. 2446.

The third issue is whether the trial court committed error in refusing to hear defendant's motion to suppress evidence prior to trial. This issue is derived from a ruling which allowed defendant to file the motion but provided that the hearing was to be "during the course of the trial."

On the day defendant's case was called for trial, Mr. Malek told the court that he wanted to file a motion to suppress evidence. The State objected on the ground that it was not timely. The objection was sustained with a ruling that "[w]e will have a hearing on it after we pick the jury." On February 14, the jury having been selected and with opening statements about to be made, Mr. Malek asked leave to file the motion. The court allowed the filing but ruled that "* * * it will be heard during the course of the trial; and if the Court sees fit that we have a hearing in chambers with reference to this, we will go into chambers * * *. I will rule on the Motion to Suppress any time you request, and if there is some evidence that has to be heard outside the jury, just ask the Court." Mr. Malek responded, "* * * I have no objection to the procedure." The State's case was heard without any request by defendant for a hearing outside the jury's presence. After the State rested its case,

the motion was denied. Defendant contends that it was error for the trial court to have denied him a hearing on his motion to suppress evidence prior to trial.

■■ It is provided in our code of criminal procedure that a motion to suppress evidence "* * * shall be made before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion." (Ill. Rev. Stat. 1969, ch. 38, par. 114—12(c).) It does not appear that defendant lacked the opportunity to make his motion or that he was unaware of the grounds for its support. Therefore, defendant's motion was not timely. *People v. Johnson,* 38 Ill.2d 399, 231 N.E.2d 447.

■■ Despite this fact, defendant was given leave to file the motion with the opportunity to request a hearing, if necessary, outside the jury's presence. Defendant did not request such a hearing. Therefore, he cannot now predicate error on the trial court's failure to grant him a hearing he could have requested. (See *People v. Kostos,* 21 Ill.2d 496, 173 N.E.2d 466; compare *People v. Braden,* 34 Ill.2d 516, 216 N.E.2d 808.) We conclude that the trial court did not err in denying defendant a hearing of his motion to suppress evidence prior to trial. See *People v. Thomas,* 120 Ill.App.2d 219, 256 N.E.2d 870.

The fourth issue is whether the trial court erred in denying defendant's motion to suppress evidence. This issue arises from his contention that on May 19, 1968 when the three officers pulled along side his car, announced their authority and ordered him to drive to the curb, he was subjected to an unlawful arrest.

■■■ We reject this contention. The curbing of a car is not an arrest of the driver. (*State v. Cloman* (1969), 254 Ore. 1, 456 P.2d 67.) An arrest involves three elements: (1) authority to arrest; (2) assertion of that authority with intention to effect an arrest; and (3) restraint of the person to be arrested. (*People v. Mirbelle,* 276 Ill.App. 533.) A conversation between a citizen and a police officer is not a restraint of liberty. (*People v. Howlett,* 1 Ill.App.3d 906, 274 N.E.2d 885; *Coates v. United States* (D.C. Cir. 1969), 413 F.2d 371.) Even an order by a police officer commanding a citizen to stop is not an arrest. (See *People v. Bridges,* 123 Ill.App.2d 58, 259 N.E.2d 626.) Therefore, defendant was not under arrest when on May 19, 1968 three Chicago policemen told him to curb his car. Nor was he subjected to a search when one of them picked from the ground a tinfoil package that defendant dropped. (*People v. Howlett,* 1 Ill.App.3d 906, 274 N.E.2d 885.) We conclude that the trial court did not err when it denied defendant's motion to suppress evidence.

■■ The fifth issue is whether, during his trial, defendant was denied the effective assistance of counsel guaranteed him by the sixth amend-

ment to the constitution of the United States and by article II, sections 2 and 9 of the Illinois constitution. This issue arises out of defendant's contentions which bring into question the professional competence of Mr. Thomas J. Maloney and Mr. Joseph A. Malek, two lawyers of defendant's choice who represented him in his trial.

These contentions do more than attack the legal sufficiency of defendant's convictions. They cast aspersions on the professional reputation of two lawyers. Because of their seriousness, we have carefully examined the record before us. This examination discloses that the lawyers defendant now labels as incompetents remained at their tasks from the beginning of his trial to its end when he was sentenced. Mr. Malek, the principal defense lawyer, participated in every phase of the case. He subjected prosecution witnesses to cross-examination, made every motion that could be made in defendant's interest and urged on the court every consideration that a conscientious lawyer could possibly make on behalf of a client. Ironically, defendant who now questions the competence of his lawyers added to their burdens by being absent. To say, then, that defendant's contentions manifest ingratitude is to minimize the bald effrontery they represent. In our judgment, defendant's lawyers discharged their professional responsibilities with competence. It follows that defendant was not denied his constitutionally guaranteed right to effective assistance of counsel. See *People v. Underhill*, 38 Ill.2d 245, 230 N.E.2d 837; *People v. Nevith*, 102 Ill.App.2d 408, 243 N.E.2d 324; *People v. Van Dyke*, 106 Ill.App.2d 411, 245 N.E.2d 324.

The sixth issue is whether defendant was deprived of his right against self-incrimination by the closing argument which the assistant State's Attorney made to the jury. This issue arises from a summation to the jury that included comments on defendant's absence from the trial.

The record shows that when Mr. Malek argued to the jury, he attempted to explain defendant's absence from the trial. By almost any view, this attempt was a lawyer's heroic but futile effort to persuade a jury to the cause of his client. The remarks were emotional and it would have been better if they had not been made. And as was to be expected, the assistant State's Attorney responded to these remarks when he summarized the State's case in his closing argument to the jury.

It is a firmly established rule of our criminal law that when remarks of defense counsel provoke or invite the argument of a prosecuting attorney, a claim of error cannot be based on the response that is produced. (See *People v. Izzo*, 14 Ill.2d 203, 214, 151 N.E.2d 329; compare *People v. Wilson*, 116 Ill.App.2d 205, 253 N.E.2d 472.) In this case, understandably, the comments of the assistant State's Attorney were pro-

voked. Therefore, we hold that defendant was not deprived of his rights against self-incrimination by the State's closing argument which contained comments concerning defendant's absence from his trial.

The seventh and final issue is whether, on its own motion, it was the trial court's duty to instruct the jury. This issue is based on defendant's contention that the trial court did not instruct the jury concerning the law applicable to this case.

■■■ Defendant concedes that the jury was instructed on the elements of the offense with which he was charged: unlawful possession of a narcotic drug. This being so, it is settled in our law that it was defendant's responsibility to tender to the court jury instructions which bore on his theory of the case. (See *People v. Davis,* 74 Ill.App.2d 450, 453, 221 N.E.2d 63.) Generally, a trial judge does not have the duty to instruct a jury on his own motion. (*People v. Lindsay,* 412 Ill. 472, 484, 107 N.E.2d 614; *People v. Baker,* 8 Ill.2d 522, 524, 134 N.E.2d 786; *People v. Browry,* 8 Ill.App.3d 599, 290 N.E.2d 650.) The instructions which defendant now says were necessary for the jury to understand his case were not tendered. Under these circumstances, the trial judge had no obligation to instruct the jury on his own, and his failure to do so did not deprive defendant of a fair trial. (See *People v. Carvin,* 20 Ill.2d 32, 36, 169 N.E.2d 260; *People v. Porterfield,* 131 Ill.App.2d 167, 268 N.E.2d 537; *People v. Lenker,* 6 Ill.App.3d 335, 285 N.E.2d 807.) In our view, the judgment in this case is free from prejudicial error. It is affirmed.

Affirmed.

SCHWARTZ and LORENZ, JJ., concur.