PEOPLE v LAWSON

1. EVIDENCE—POLYGRAPH TEST—ADMISSIBILITY.
    Results of a lie-detector test are not admissible in evidence.

2. CRIMINAL LAW—EVIDENCE—POLYGRAPH TEST—ADMISSIBILITY.
    Reversible error resulted when a sophisticated witness verified his testimony by mentioning that he had successfully passed a polygraph examination and defense counsel's requested instruction to the jury that the law does not admit any polygraph test in evidence was not given.

3. CRIMINAL LAW—EVIDENCE—POLYGRAPH TEST—WITNESSES—ADMISSIBILITY.
    The rule of exclusion of the results of a polygraph test from being admissible in evidence includes polygraph tests given both to the defendant and any witnesses.

Appeal from Kent, Stuart Hoffius, J. Submitted Division 3 May 9, 1973, at Grand Rapids. (Docket No. 11183.) Decided August 27, 1973.

Charles Lawson was convicted of the sale of heroin. Defendant appeals. Reversed and remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, *Donald A. Johnston, III,* Chief Appellate Attorney, and *Robert A. Marsac,* Assistant Appellate Attorney, for the people.

*Alphonse Lewis, Jr.,* for defendant.

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 29 Am Jur 2d, Evidence § 831.
    Physiological or psychological truth and deception tests. 23 ALR2d 1306.

Before: DANHOF, P. J., and McGREGOR and MILES,* JJ.

MILES, J. The defendant, Charles Lawson, was convicted by a jury on a charge of the sale of heroin (MCLA 335.152; MSA 18.1122) on October 14, 1970.

He appealed to this Court and it was remanded for a consideration of post conviction motions. His motion for a new trial was denied by the trial court on January 31, 1973, but he was resentenced to a term of from 7-1/2 to 20 years, a reduction from his original 20-to 30-year sentence. Of importance to the case was the testimony of police informant, James Booker, whose job it was to make "controlled buys" of drugs. Booker's identity has been known to this Court as being involved in a similar capacity in another case. *(People v Leroy Goodwin,* 40 Mich App 709; 199 NW2d 552 [1972].) Booker testified that he obtained the packages from the defendant. He admits to having used heroin frequently while acting as an informant. He was under a probationary sentence on a marijuana conviction during the trial of the instant case. His veracity had been vigorously attacked at preliminary examination.

Defendant alleges several prejudicial errors, the first being the claim that the trial court erred in not granting a mistrial after disclosure in open court that Booker had improved his credibility by having successfully passed a polygraph test.

The fact that Booker had taken a polygraph exam was made known several times at the trial. The first reference to any polygraph examination was in answer to a question asked by defense counsel. The answer was unresponsive to the ques-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tion but the defense did not move that it be stricken. Later, the witness interjected that he had taken another polygraph test as it related to an alleged breaking and entering. Again, the defense did not move to strike it. Still later, the witness mentioned the polygraph exam to explain why the breaking and entering charges had been dropped. This episode occurred in response to a question from the defense which implied that Booker was receiving special favors from the police.

Ultimately, defendant's counsel asked the following question:

"*Q.* Now witness, after you told the police department that you were lying about these other cases, you know the reason that they didn't drop this case against Lawson, don't you?

"*A.* After I told them about I was lying, I was given a polygraph."

Again, there was no motion to strike the reference to the polygraph. Instead, defense counsel cross-examined Booker extensively to ascertain whether the suggestion had been made by the police or prosecuting attorney to get the reference to the polygraph into evidence. As to each it was vociferously denied by the witness.

Eventually, on redirect examination, the prosecution asked the question:

"*Q.* You indicated that you took a polygraph examination?

"*Mr. Lewis (defense counsel):* If the court please, I object to that also. Counsel knows very well that a polygraph examination is not admissible in any court.

"*The Court:* Objection overruled. *You asked the questions that brought it out.*

"*Mr. Lewis:* I didn't—I didn't say anything about or know anything about a polygraph test.

"*The Court:* That is right, but you asked the questions which brought it out. You may go ahead.

"*Mr. Lewis:* You know why it was brought out, too, because they probably told him to mention it.

"*The Court:* You are instructed never to do that again in this court, Mr. Lewis. I think the jury should be instructed to disregard the remark by counsel.

"*Mr. Lewis:* If the court please, can the jury be instructed at this time as to the fact that the law does not admit any polygraph test in evidence.

"*The Court: That's true,* but nevertheless, you have no business making a remark like that in front of the court or the jury."

A review of the record indicates that the court never did instruct the jury in accordance with the request of defendant's counsel.

There is continuing agitation for admission of results of lie-detector tests by prosecuting attorneys as a workable, scientific tool in the detection of perjury. It is widely used in industry. It is a well-known fact among the trial bench and the bar that defendants in criminal cases who successfully pass such tests are cleared or do not hesitate to let the jury know about it at trial.

Nevertheless, the Supreme Court has made it plain that in this state "the results of lie-detector tests are inadmissible". *People v Frechette,* 380 Mich 64, 68; 155 NW2d 830, 832 (1968). Occasionally, an unsophisticated witness may, inadvertently, make reference to improper information in the hearing of the jury. It would appear, however, that Booker has passed beyond the category of an occasional or unsophisticated witness.

The ruthless interrogation of Booker which brought improper evidence into the open arena and the remarks of defense counsel to the trial court should not be condoned. It is a firmly established rule in some jurisdictions that when re-

marks of defense counsel provoke or invite the argument of a prosecuting attorney, a claim of error cannot be based upon the response that is produced. *People v Colon,* 9 Ill App 3d 989; 293 NE2d 468 (1973). In the instant case, however, a sophisticated witness mentioned the verification of his testimony by polygraph. Defense counsel requested an instruction and it was seemingly agreed to by the trial judge. The requested instruction should have been given.

The rule of exclusion "includes polygraph tests given to both the defendant and any witnesses". *People v Leroy Goodwin,* 40 Mich App 709, 714; 199 NW2d 552, 555 (1972).

Reversed and remanded.

All concurred.