**People of the State of Illinois, Plaintiff-Appellant, v. Edward Bridges, Defendant-Appellee.**

Gen. Nos. 54,067, 54,068.

First District, Fourth Division.

March 31, 1970.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Matthew Moran and John O. Clarke, Assistant State's Attorneys, of counsel), for appellant.

No brief for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

Two complaints charged defendant with unlawful possession of a depressant drug, and unlawful possession of hypodermic needles. Ill Rev Stats 1967, c 111½, § 802 (c) and c 38, § 22–50. The State has appealed from the trial court's allowance of defendant's motion to suppress as evidence certain barbiturates (discovered in a small tin container which a police officer testified he had seen defendant drop to the ground) and hypodermic needles (found on defendant's person during a subsequent search). No brief has been filed by defendant.

The arresting officer, Thure Mills, testified, on direct examination, that he was patrolling the Fuller School area with his partner in response to a police department call concerning gang activities. He observed defendant and another man walking past the unmarked squad car. Defendant saw the out-of-uniform officers and threw a small tin container to the ground. Mills picked up the box, examined its contents, and placed defendant under arrest. Then they searched defendant and found the hypodermic needles.

On cross-examination, the officer testified that, after seeing the container dropped, he yelled to defendant to stop, picked up the container, and then examined its contents.

The Assistant State's Attorney requested a finding of fact to clarify the order of events. The judge responded that "the officer said he stopped him before he picked up the box." The prosecutor replied, "Yes, your honor." The judge subsequently stated his finding of fact "that the officer detained the man by saying stop which is technically under arrest for no cause. He then picks up something, looks at it and then he thought it may be a dangerous drug after he arrested him." The court also stated, as a finding of fact, that the container was dropped after the officer said stop. Officer Mills was the only witness who testified on the motion to suppress.

61

■ Initially, the State contests the court's finding of fact that the officer said "stop" before the accused dropped the container. A thorough examination of the record reveals that the only reference to a communication from the witness to defendant came on cross-examination when he testified he saw the tin drop, defendant continued walking, and he then told defendant to stop. The finding of fact to the contrary by the trial court is unsubstantiated in the record.

The basic substantive issue in this action is whether the suppressed evidence was obtained by the police as a result of an illegal and unreasonable search and seizure, in violation of Article II, section 6, of this State's constitution and the fourth amendment of the United States constitution. Our concern, therefore, is directed toward the reasonableness of the police action for "what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." Elkins v. United States, 364 US 206, 222; Terry v. Ohio, 392 US 1, 9; People v. McCracken, 30 Ill2d 425, 429, 197 NE2d 35; People v. Georgev, 38 Ill2d 165, 171, 230 NE2d 851. See also People v. Machroli, 44 Ill2d 222, 225, 254 NE2d 450 (dissenting opinion). We note that our Supreme Court has consistently upheld the actions of a police officer as reasonable when he makes a warrantless search of the person incidental to a valid arrest. People v. McCrimmon, 37 Ill2d 40, 224 NE2d 822; People v. Hanna, 42 Ill 2d 323, 247 NE2d 610.

Before meeting the constitutional issue, it becomes necessary to determine the precise point in time when the arrest was made. The trial judge ruled that the arrest was technically made when the officer said "stop" to defendant. If, arguendo, the arrest did take place at this point, there would be a serious doubt as to the existence of probable cause to make such arrest, and this would greatly affect the reasonableness of the resultant

search. Also, as we have already noted, when the trial judge made his ruling, he misinterpreted the facts relating to the dropping of the box. Our inquiry into the time of the arrest is further dictated because the order appealed from involves the suppression of two evidentiary items seized at different times by different means, and each is the foundation for a separate complaint against defendant. The police obtained the barbiturates by picking them up after they had been dropped on the ground. The hypodermic needles were discovered in a later search of defendant's person.

■ The first question for our consideration is whether an arrest was effectuated when the out-of-uniform police officer yelled "stop" and defendant obeyed. A somewhat similar factual situation was present in People v. Mirbelle, 276 Ill App 533, but with the significant difference that the police officers, who had observed defendant near the scene of a recent robbery, drew their guns and shouted, "Stick them up, we are police officers, stick them up." This was held to constitute an arrest. The court declared that in the legal sense of the term, an arrest involves three elements: authority, intention, and a restraint of the person. Mirbelle, supra, at 541. This definition was amplified in People v. Jackson, 98 Ill App2d 238, 240 NE2d 421, where the court stated at page 244:

> An arrest, in the sense we are concerned with here, requires a purpose or intention to effect an arrest under a real or pretended authority, an actual or constructive seizure or detention of the person to be arrested by one having the present power to control him, a communication by the arresting officer of his intention to arrest, and an understanding by the person to be arrested that such is the intention of the arresting officer. See 4 Words and Phrases, Arrest, p 234 et seq., 5 Am Jur2d, Arrest, § 1.

This principle has, to a limited extent, been codified in the Code of Criminal Procedure as follows:

> "Arrest" means the taking of a person into custody. (Ill Rev Stats 1967, c 38, § 102–5.)

> An arrest is made by an actual restraint of the person or by his submission to custody. (Ill Rev Stats 1967, c 38, § 107–5(a).)

■■ The pivotal element of the Mirbelle definition, when applied to the facts of the instant case, is the "intention" of both the police officer and defendant. The word "stop" is not necessarily to be construed in every instance as a communication of an intention to arrest, and in order for it to warrant that connotation, it must be coupled with sufficient other circumstances to indicate the intent. We do not find any such circumstances present in the case at bar. The officers did not display a gun, nor was either in uniform. We do not believe that the evidence established an immediate intention on the part of the officers to effectuate an arrest when defendant acquiesced in their command to stop.

■ Perhaps more important in this case, however, is the "understanding by the person to be arrested that such is the intention of the arresting officer." People v. Jackson, supra. As stated in Mirbelle, "there must be an intention, understood by the one arrested, to accomplish the arrest." In Hicks v. United States, 382 F2d 158 (DC), the court felt that, although the thought processes of police officers and defendants were to be considered,

> the test must be not what the defendant . . . thought, but what a reasonable man, innocent of any crime, would have thought had he been in defendant's shoes. United States v. McKethan, 247 F Supp 324, 328.

Applying either the reasoning of Hicks or that in Jackson and Mirbelle, the conclusion based on the facts of this case is the same. When defendant was told to stop, he did not have reasonable ground to believe that he was under arrest. It is possible that his "submission" was subject to a belief that he might be questioned, but that is quite a different matter. He may even have been aware, from his own personal experience, that the out-of-uniform policeman was, in fact, a policeman, but this would be nothing more than speculation, which finds no support in the record. Further, there was no overt demonstration of any kind by the two men in the automobile to indicate that they were police officers. And a person told to "stop" by someone present behind him in an area of gang activity is likely to obey. We conclude, therefore, that defendant, or a reasonable man under the circumstances of this case, would not think that he had been arrested.

■ For the foregoing reasons, we find that no arrest was made by the officers at the moment defendant restricted his movement upon hearing the word "stop." We are also compelled to this decision because the contrary result would seriously impede law enforcement by severely limiting proper police investigatory procedures. In Terry v. Ohio, 392 US 1, 22, the Supreme Court, discussing the governmental interest in effective crime prevention and detection, stated that

> it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.

This underscores the need for and legitimacy of the policeman's investigative function. To hold that every

person has been arrested when stopped by a policeman under circumstances suspicious enough merely to warrant investigation, would be a misguided exercise of the judicial function, with consequent unfortunate results. The "fact-finding" process utilized by police has been left intact even in recent pronouncements which have generally placed increased burdens on police officers in the exercise of their duties. As stated in one such case, Miranda v. Arizona, 384 US 436, at page 477:

> Our decision is not intended to hamper the traditional function of police officers in investigating crime. . . . General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding.

See also Escobedo v. Illinois, 378 US 478 and United States v. Clark, 294 F Supp 1108.

The next important fact in the brief sequence of events in the instant case occurred when the officer picked up the container and examined its contents. The tin box contained two capsules, "blue and white, blue, red in color." The officer testified that it was immediately subsequent to this examination that defendant was placed under arrest. A laboratory test justified the officer's quick conclusion that the capsules were barbiturates, possession of which is a criminal offense (with certain exceptions not pertinent here). Ill Rev Stats 1967, c 111½, § 802(c). Having seen that the box of capsules was not taken incident to an arrest, whether lawful or unlawful, the question, then, is whether, under these circumstances, the trial court correctly suppressed the capsules as evidence. We believe it did not.

The officer had observed defendant drop the container to the ground under circumstances sufficiently suspicious to warrant an investigation. See People v.

Cummings, 38 Ill2d 11, 230 NE2d 187. The tin container was in plain and open view on the ground, having been abandoned by defendant. As to the barbiturates, therefore, there obviously was no search. "A search implies a prying into hidden places for that which is concealed, and it is not a search to observe that which is open to view." People v. Davis, 33 Ill2d 134, 210 NE2d 530; People v. Woods, 26 Ill2d 557, 188 NE2d 1; People v. Heidman, 11 Ill2d 501, 144 NE2d 580. See, particularly, People v. Sylvester, 43 Ill2d 325, 327–328, 253 NE2d 429.

 Nor was there an unlawful seizure of the capsules. In Trujillo v. United States, 294 F2d 583, under a similar factual circumstance, the court, in discussing the reasonableness of a seizure of abandoned goods, stated at pages 583–4:

> There was no *seizure* in disregard of any lawful right when the officers retrieved and examined the packets which had been dropped in a public place. [Citations omitted.] As the evidence was obtained prior to and independent of arrest, the arguments of counsel as to the legality of the arrest merit no consideration. (Emphasis supplied.)

We believe that the seizure of the abandoned tin box of capsules was reasonable, there having been no provocation by the officers which could be said to have forced defendant to drop it.* The capsules should therefore not have been suppressed as evidence. People v. Sylvester, 43 Ill2d 325, 327–328, 253 NE2d 429.

 Defendant's arrest followed the seizure and examination of the tin's contents. We believe that rea-

---

* Ill Rev Stats 1967, c 111½, § 805, specifically authorizes law enforcement officers to seize without warrant a depressant drug whenever such an officer has reasonable grounds to believe that the drug has been the subject of unlawful possession, in violation of the statute.

67

sonable grounds then existed for the placing of defendant under arrest. Ill Rev Stats 1967, c 38, § 107–2(c). Probable cause for arrest exists when the arresting officer possesses knowledge of facts and circumstances sufficient to justify a "man of reasonable caution" in believing that an offense is being, or has been, committed by the person arrested. People v. Peak, 29 Ill2d 343, 348, 194 NE2d 322. See People v. McCrimmon, 37 Ill2d 40, 43, 224 NE2d 822.

The final issue concerns the suppression of the hypodermic needles, discovered as a result of a search of defendant's person following his arrest. "The doctrine that a search without warrant may be lawfully conducted if incident to a lawful arrest has long been recognized as consistent with the Fourth Amendment's protection against unreasonable searches and seizures." Ker v. California, 374 US 23, 41. See also Ill Rev Stats 1967, c 38, § 108–1; People v. Hanna, 42 Ill2d 323, 328, 247 NE2d 610, and cases there cited; and People v. Jones, 31 Ill2d 240, 245, 201 NE2d 402. Since we have already recognized the lawfulness of the arrest, and because the record establishes that the search was incident to that arrest, the court erred when it suppressed as evidence the needles which were the fruits of that search.

Accordingly, the order of the trial court sustaining defendant's motion to suppress the barbiturates and hypodermic needles as evidence under these complaints, is reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

DRUCKER and LEIGHTON, JJ., concur.