THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *v.* RONALD HOWLETT, *et al.,* Appellees.

(No. 54908;

First District—August 31, 1971.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel,) for the People.

Gerald W. Getty, Public Defender, of Chicago, (James N. Gramenos, of counsel,) for appellees.

Mr. PRESIDING JUSTICE LEIGHTON delivered the opinion of the court:

This is an appeal by the State. Pursuant to Supreme Court Rule 604(a), it seeks review of an order that suppressed evidence which would have been offered in defendants' trial for unlawful use of weapons. The issue is whether the order was erroneous. In resolving this issue, it is necessary to decide whether, in violation of state and federal constitutions, defendants were arrested and subjected to a search and seizure. The facts which give rise to the issue are revealed in the testimony of one witness, Alfred Marino, one of two Chicago policemen involved.

August 7, 1969 at about 2:50 A.M., Marino and his partner Earl Severin, in uniform and in an official police squad car, received a call to investigate an attempted theft of an automobile at 4200 West Jackson Boulevard. They went to that address and spoke with the owner who told them that he had observed two men trying to steal his automobile. An examination revealed that someone had tampered with and broken the ignition of the vehicle. The owner, however, was unable to give a description of the two men but he agreed to accompany the officers in a search of the neighborhood.

At about 3:15 A.M., with the owner seated in the rear of the squad car, the two officers drove west on Adams Street (a block and a half from the place where the attempted theft occurred). They saw defendants walking on the south side of the street, in the same direction. Neither officer had seen defendants before. The owner of the automobile did not say defendants were, or looked like, the two he had observed trying to steal his car. No one pointed to defendants as the perpetrators of any crime. The officers did not have a warrant nor did they see defendants commit any offense.

When the squad car was about 25 feet away from defendants, Severin, who was driving, called to them and said, "Would you fellows come over here, please?" Both defendants turned, looked at the two officers and kept walking. When they were about five to ten feet farther, Marino said to Severin, "It seems like these guys might have something." Severin stopped the car, both officers, unarmed and without saying anything, alighted and approached the defendants. When the officers were within eight to ten feet of them, defendants stopped. The officers saw them lift

their shirts and drop two objects to the ground. When this happened, Marino reached for his gun; Severin drew his. Marino walked toward the two men. He then saw that the objects on the ground were sawed-off shotguns. He picked them up and said to the defendants, "You are under arrest." Search of defendants disclosed a quantity of shotgun shells. Defendants were later indicted for the offense of unlawful use of weapons.

Prior to trial they filed motions to suppress evidence alleging that in violation of their constitutional rights, they were arrested, searched, two sawed-off shotguns and shells were taken from them without warrant or lawful authority. Defendants prayed that the articles be suppressed. After hearing evidence and arguments of counsel, the trial judge found "[t]hat the circumstances did not justify a reasonable inference that [defendants] were about to commit or had committed an offense * * *." He concluded that "I don't think the fact that two people were walking down the street justified under these circumstances this action." He sustained defendants' motions and ordered that the shotguns and the shells be suppressed.

Before us the State contends that the order is erroneous. It argues that Marino and Severin, while performing a proper investigatory function, lawfully attempted to question defendants who voluntarily exposed weapons which the police officers saw, seized and then, with probable cause, arrested defendants and searched them. To meet this contention defendants "[u]rge this Court, as was resolved by the trial judge, to acknowledge that in light of the circumstances of this on-the-street encounter, the police approach constituted a 'seizure' and a serious intrusion upon the personal security of these defendants." Defendants argue that when Officer Severin said to them "Would you fellows come over here, please?" their liberty was restrained and that they were seized without probable cause in violation of their rights under state and federal constitutions. These contentions compel the inquiry whether at the time in question defendants were arrested without probable cause and subjected to a seizure which violated constitutional quarantees.

■■ An arrest is a seizure of the person; and if it is without a warrant or probable cause, it is unreasonable within the purview of the fourth amendment to the federal constitution. (*People v. Curtis* (1969), 70 Cal.2d 347, 450 P.2d 33, 36; *Wong Sun v. United States* (1963), 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441.) The legislature of this State has provided that an "[a]rrest means the taking of a person into custody." (Ill. Rev. Stat. 1969, ch. 38, par. 102—5.) It is accomplished "[b]y an actual restraint of the person or by his submission to custody." (Ill. Rev. Stat. 1969, ch. 38, par. 107—5(a).) As defined, and in the context with which we are concerned, every arrest involves three elements: (1),

authority to arrest; (2), assertion of that authority with intention to effect an arrest; and (3), restraint of the person to be arrested. (*People v. Mirbelle,* 276 Ill.App. 533.) Although the intention to arrest must be communicated, and defendant's understanding of that intent is a factor to be considered, "[t]he test must be not what the defendant * * * thought, but what a reasonable man, innocent of any crime, would have thought had he been in the defendant's shoes." *Hicks v. United States* (D.C. Cir., 1967), 382 F.2d 158.

■■ As a corollary of these principles, it has been held that a police officer who merely engages in conversation with a citizen does not thereby create the requisite restraint on liberty which would constitute an arrest. *Coates v. United States* (D.C. Cir., 1969), 413 F.2d 371.) Our court has held, for example, that an officer who sees a person drop a container to the ground and yells for him to stop, does not make an arrest at the time he speaks. (*People v. Bridges,* 123 Ill.App.2d 58, 259 N.E.2d 626.) Long before contemporary refinements on fourth amendment rights, our Supreme Court recognized the right of police officers to stop and question citizens concerning matters within the scope of a criminal investigation. (See *People v. Henneman,* 367 Ill. 151, 10 N.E.2d 649.) Other courts, discussing either common or statutory law, have generally assumed that police officers have the right, in the course of a criminal investigation, to make brief threshold inquiries of a citizen. See *Commonwealth v. Lehan* (1964), 347 Mass. 197, 196 N.E.2d 840; *State v. Hedman,* 269 Minn. 375, 130 N.W.2d 628; *Kavanagh v. Stenhouse,* (1961), 93 R.I. 252, 174 A.2d 560; *De Salvatore v. State* (1960), 52 Del. 550, 163 A.2d 244 and *People v. Simon* (1955), 45 Cal.2d 645, 290 P.2d 531.

■■ From a study of judicial decisions and the law of arrests the country over, reputable scholars have concluded that "[i]t is obvious * * * an officer may ask an individual a question * * * provided that he does not confine or restrain the individual without his consent." (Remington, *The Law Relating to "On The Street" Detention, Questioning and Frisking of Suspected Persons and Police Arrest Privileges in General* (1960), 51 J. Crim. L.C. & P.S. 386, 389; LaFave, *"Street Encounters" and the Constitution* (1968-69), 67 Mich. L.Rev. 40; and Note, (1938), 37 Mich. L. Rev. 311.) Unlike an arrest which requires probable cause, in a threshold inquiry of a citizen, aimed at effective crime prevention and detection, there is "[t]he recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio* (1968), 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L. Ed.2d 889.

When applying these principles here, we notice that this record does not disclose policemen on the prowl. On the contrary, it discloses two officers responding to the call of a citizen whose property had been subjected to an attempted theft. A block and one-half away from the scene of the offense, they saw the same number of men that had been described to them. It was dark, in a densely populated area of a large city. When Officer Severin called to the two defendants there was no probable cause to arrest them. From the circumstances, however, the officers could have reasonably inferred that defendants were the two men who had tampered with the automobile in question. In any event, the attempt to talk and the approach of the officers were neither arrests nor intrusions on defendants' personal security. The officers acted in an appropriate manner when unarmed, without any show of force, they pursued their investigation. It was not until defendants dropped the objects that Officer Marino reached for his gun and Severin drew his. Even at this point, defendants were not under arrest. When Marino drew closer and saw that the objects were sawed-off shotguns, both officers had reason to believe that a crime was being committed in their presence. At that point they had probable cause to arrest the defendants. *People v. Cummings,* 38 Ill.2d 11, 230 N.E.2d 187 and *People v. Bridges, supra.*

 When Officer Marino picked up the shotguns there was no search because "[a] search implies a prying into hidden places for that which is concealed, and it is not a search to observe that which is open to view." *People v. Davis,* 33 Ill.2d 134, 138, 210 N.E.2d 530. Since the arrest of defendants was lawful, the search that followed which revealed the shotgun shells was not unreasonable. (Ill. Rev. Stat. 1969, ch. 38, par. 108—1; *People v. Clay,* (Ill.App.2d); Gen. No. 55329.) Therefore, neither when the threshold inquiry was made of them nor when they were arrested, were defendants subjected to an unreasonable search or seizure. For these reasons it was error for the trial judge to sustain defendants' motion to suppress the evidence. We reverse the order and remand the cause for further proceedings.

Reversed and remanded.

SCHWARTZ and STAMOS, JJ., concur.