THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEVEN WIPFLER, Defendant-Appellant.

Third District   Nos. 75-121, 74-325 cons.

Opinion filed April 22, 1976.

STOUDER, J., dissenting.

Michael J. Goldstein, of Chicago, for appellant.

Martin Rudman, State's Attorney, of Joliet (Thomas Carey, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant Steven Wipfler, an 18-year-old high school student, was convicted of two separate charges of burglary and sentenced to concurrent terms of 4 years' probation, with the first 45 weekends to be spent in the Will County Jail. We have consolidated the two cases for the purposes of hearing and disposition.

On appeal in this court defendant argues that his confession to the crimes was obtained by the police subsequent to an illegal arrest, or that, alternatively, the confession was given without a valid waiver of his constitutional rights as required by *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.

The two burglaries involved took place in the month of February, 1974, in Bolingbrook, Illinois. On the evening of February 4, 1974, an office trailer on a construction site was broken into, entered, and then set on fire. Thereafter, during the weekend of February 16, 1974, the home of Jerald Kraushaar was burglarized and several items were taken. Kraushaar reported the incident when he returned, from a trip out of town with his family, on February 19, 1974. The police subsequently talked to a youth

who lived in the neighborhood who told them that Steven Wipfler would know something about the breakin. At 8:30 a.m. on February 20, 1974, police telephoned defendant at his home. His mother said he was at school, but agreed to tell him to go down to the station after school. The police informed her that they simply wished to ask Wipfler some questions about some burglaries.

Defendant did come to the police station after school where he first talked briefly to Chief Johnson, who had apparently taken on a sort of father image to Wipfler since the death of the youth's father. The chief, in the course of his conversation with Wipfler, told him something to the effect that if a person did something wrong, he should be a man and admit it. Wipfler then was escorted into an office room where he was interrogated by detectives Mahoney and Kuntz. The detectives testified that they first informed defendant fully of his "Miranda" rights concerning his privilege against self-incrimination and the right to counsel. Wipfler, however, testified he was not so informed.

Mahoney first inquired about the Kraushaar burglary, and Wipfler denied complicity in the incident. When the detectives asked him if he would take a polygraph test on the subject, however, defendant said he would not and admitted knowing something about the breakin. The questioning then turned to the trailer burglary. At first, Wipfler denied any knowledge of it, but finally said he knew about it although he had not participated. Officer Mahoney expressed disbelief of this story. At that point, Wipfler said he would tell the truth about everything. Mahoney interrupted him again to carefully re-emphasize defendant's constitutional rights. The detective read the rights from a card and allowed defendant to examine a waiver form before defendant signed it. Defendant later testified that he signed the card because Mahoney told him to, and that he did not read it.

After defendant had signed the waiver, he admitted participation in both burglaries. This admission came after 45 minutes to an hour of questioning as we have indicated. Later defendant drove his car home. He obtained from his room, and surrendered to police, several items subsequently identified by Jerald Kraushaar as having been taken during the burglary of the Kraushaar home. Defendant remained at home that night but came to the police station the following day.

A motion to suppress the items and the confession as evidence was made in the court below, but, following extensive testimony heard by the trial court, the motion was denied. The cases proceeded to trial and resulted in the conviction of the defendant in each case. We note that in each trial the substantial portion of the evidence presented by the State consisted of Wipfler's confession. In the trailer burglary case there was also accomplice testimony and in the Kraushaar case there were the

additional items of evidence which were shown to have been in the possession of defendant.

Defendant argues on appeal that from the time he walked into the police station, or at least into the interrogation room, he was under arrest. He contends that the arrest was illegal because there was no warrant and no other probable cause to arrest him and that the resulting confession was thus inadmissible in evidence against him as a fruit of the illegal arrest.

■■ It is clear that statements and other evidence obtained pursuant to an illegal arrest are inadmissible as evidence unless there is some intervening act of free will (*Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407); and the fact that *Miranda* warnings were given does not necessarily purge the taint of an illegal arrest (*Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254). Even assuming, however, that there was no probable cause to arrest the defendant initially, we must conclude from the record that defendant was not under arrest until he agreed to admit more than mere knowledge about the crimes, at which point there would be no dispute as to probable cause to arrest.

An arrest is the taking into custody of a person, accomplished either by actual restraint of the person or his submission into custody. (*People v. Howlett* (1st Dist. 1971), 1 Ill. App. 3d 906, 909, 274 N.E.2d 885; Ill. Rev. Stat. 1973, ch. 38, §§102—5, 107—5(a).) We conclude that simply by acceding to a police request to come to the station to answer some questions, defendant was not thereby under arrest. We also conclude that he did not automatically become arrested by further agreeing to answer questions once he arrived at the station. Nor, on the basis of the record, would we be justified in concluding, that, once the interrogation began, defendant was prevented from leaving whenever he pleased. Detective Mahoney testified that he did not consider defendant under arrest until defendant announced he would tell the truth, after having already admitted knowledge of both crimes, but denying participation.

While we are not bound by Federal Court decisions on the issue before us, we find, pertinent to the issues in this case, a statement by the Federal Appellate Court in *Hicks v. United States*, 382 F. 2d 158 (D.C. Cir. 1967), regarding the nature of an arrest as follows:

> "The test must not be what the defendant * * * thought but, what a reasonable man, innocent of any crime, would have thought had he been in defendant's shoes."

■■ While defendant Wipfler testified that he wanted to leave during the early questioning, but felt that he could not, that subjective evidence is not as significant as the conclusion which we find clearly stems from the testimony as a whole: A reasonable, innocent man, would not have felt

himself under arrest or in any significant way restrained in his freedom, except voluntarily, on the basis of the record before us.

The communication of an intent to arrest, on the part of an officer, is also a factor to be considered in determining if there has been an arrest. (*People v. Bridges* (1st Dist. 1970), 123 Ill. App. 2d 58, 63, 65, 259 N.E.2d 626; *People v. Jackson* (1st Dist. 1966), 98 Ill. App. 2d 238, 244, 240 N.E.2d 421.) While the detectives in the cause before us did not expressly explain to the defendant that he could leave at any time, neither did they in any way suggest or say that he had to stay. He was allowed to drive his car home after making the statement to police, and he stayed at home that night.

Absent evidence, other than defendant's subjective state of mind, that the police either intended to place him under arrest when he came to the station or that they restrained him from leaving when he attempted to do so, we must conclude that he was not under arrest, and that the subsequent confession given by defendant was not rendered inadmissible by an alleged illegal arrest.

■■ Defendant Wipfler argues, alternatively, that the State did not sufficiently show that he was apprised of his *Miranda* rights and then waived them in an intelligent, voluntary and knowing fashion. The officers testified that they informed Wipfler of his rights at the very outset of the questioning, and that they again went over his rights directing his attention to the printed waiver form before he actually made his confession, at the time he indicated he would tell the truth. Wipfler denied being advised of his rights initially and claimed he did not read the waiver form before he signed it. This conflict in the facts, necessarily, was to be resolved by the trial court as the trier of fact and the court's denial of the motion to suppress on this issue indicates that it resolved the dispute in favor of the testimony of the detectives (*People v. Haskell* (1968), 41 Ill. 2d 25, 30-31, 241 N.E.2d 430).

■■■ Defendant argued, first, that his interrogation was custodial in nature, calling into play the need to give *Miranda* warnings. As we have already observed, it is possible that the custodial nature of the situation might be sufficient to require the giving of warnings without being enough to constitute an arrest. In any event, we will assume that it was necessary for detectives to inform Wipfler of his rights to remain silent and to consult counsel. The record indicates that he was so informed.

Defendant bases his argument, that there was no valid waiver of rights, on the asserted failure of the trial court to consider various important factors, such as his age, intelligence, background, mental capacity and education. These factors must certainly be evaluated by the court. (*People v. Baker* (4th Dist. 1973), 9 Ill. App. 3d 654, 659-660, 292 N.E.2d 760.) The issue of voluntariness depends on the totality of circumstances,

including the characteristics of the defendant and the nature of the questioning. *People v. Simmons* (1975), 60 Ill. 2d 173, 179, 326 N.E.2d 383.

■■ While the court did not make specific reference to such characteristics in denying the motion to suppress, we believe it must necessarily have considered defendant's age and intelligence in passing on the motion. The trial court had two separate opportunities to view defendant on the witness stand, and should have been in a very good position to evaluate the ability of the defendant to understand and waive his rights knowledgeably. In the cases relied upon by Wipfler, on this issue on appeal, there was ample reason to question defendant's ability to understand the defendant's rights in those cases since there was evidence of extremely low intelligence. *People v. Simmons* (1975), 60 Ill. 2d 173, 326 N.E.2d 383; *People v. Turner* (1973), 56 Ill. 2d 201, 306 N.E.2d 27.

■■ Defendant also argues that the record shows a "calculated course of conduct" on the part of the police which was designed to coerce a confession from defendant. We see no merit in such contention. The contention is based largely upon the discussion between Chief Johnson and defendant Wipfler just before the interrogation. Defendant now argues that the comment of the chief, to the effect that he should admit it if he had done something wrong, was a subtle attempt to force a confession, coming as it did from one who was not only the chief of police but also a father figure to the defendant. A simple exhortation to tell the truth is not enough, absent unusual circumstances, to invalidate a subsequent confession. (*People v. Taylor* (1974), 58 Ill. 2d 69, 76-77, 317 N.E.2d 97.) Since Chief Johnson was in a special position in relation to defendant, this certainly would be a further element to consider. (*People v. Ruegger* (4th Dist. 1975), 32 Ill. App. 3d 765, 771, 336 N.E.2d 50.) We do not, however, perceive a scheme designed to coerce a confession from defendant arising out of Chief Johnson's comments, either alone or in conjunction with the interrogation procedures employed by detectives Mahoney and Kuntz. Defendant emphasizes that Chief Johnson urged defendant to admit any wrongdoing rather than tell him of his right to remain silent and to obtain an attorney. Chief Johnson's advice simply amounted to an admonition to tell the truth. Wipfler was immediately thereafter advised of his constitutional rights through the *Miranda* warning given by the detectives. The question of the voluntariness of defendant's confession was determined by the trial court and its decision on this issue should not be overturned by a reviewing court unless it is contrary to the manifest weight of the evidence. *People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601.

On the basis of the record before us we do not believe that the decision of the trial court was contrary to the manifest weight of the evidence.

Accordingly, the judgment of the Circuit Court of Will County is affirmed.

Affirmed.

STENGEL, J., concurs.

Mr. JUSTICE STOUDER, dissenting.

I disagree with the result reached by the majority in that I agree with defendant's contention his confession was obtained by the police subsequent to an illegal arrest. Neither the majority nor the State seem to dispute defendant's position that if he was under arrest at the commencement of the interrogation, then the subsequent confession is inadmissible. Accordingly, I will deal here only with whether defendant was under arrest at the beginning of his interrogation.

If an individual is in custody, that individual is as a matter of law under arrest. No authorities are cited by the majority in support of their proposition regarding an interim stage of custodial non-arrest. The Criminal Code defines "arrest" as meaning "the taking of a person into custody." (Ill. Rev. Stat. 1973, ch. 38, par. 102—5.) The Code also provides "an arrest is made by an actual restraint of the person or by his submission into custody." (Ill. Rev. Stat. 1973, ch. 38, par. 107—5.) The majority, although they cited the Code's definition of arrest early in their opinion, apparently overlook it later when they state "* * * it is possible that the custodial nature of the situation might be sufficient to require the giving of warnings without being enough to constitute an arrest." The majority is no doubt referring to the requirement that the *Miranda* warnings be given to an individual subjected to police interrogation while in custody. (*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) What I feel compelled to dispute is their conclusion an individual can be in custody to a sufficient degree to fall within the requirements of *Miranda* and yet not enough in custody to constitute being under arrest. This to me appears to be an attempt to rationalize the violation by the police of defendant's constitutional rights.

After defendant spoke with the police chief for about 10 or 15 minutes, he was escorted into the sergeant's room where he was given the *Miranda* warnings and interrogated behind closed doors by Detectives Mahoney and Kuntz for about 45 minutes to an hour. Defendant at the end of this period stated he would tell the truth about everything. The *Miranda* warnings were given to him a second time, this time in writing. Defendant signed the waiver form. It is inconceivable to me anyone might seriously contend that where an individual is given the *Miranda* warnings orally he is not under arrest but when he is given these warnings in writing and this

is coupled with his signing the waiver form, he suddenly becomes under arrest. What is of paramount significance to me is the absence in the record of any material facts to distinguish the police officers' conduct toward defendant at the beginning of the interrogation, at which time the officers testified defendant was not under arrest, and later in the interrogation, when defendant was given the *Miranda* warnings a second time. At neither time was defendant told he was either under arrest or not under arrest or that he was free to leave or not free to leave. It is hard for me to comprehend how this custodial non-arrest suddenly developed into an arrest without any material change in circumstances.

The testimony of the two interrogating police officers is enlightening. Officer Mahoney testified on cross-examination he usually interrogates individuals he has arrested in a room with the door closed. He stated he did not consider defendant a suspect and yet he also stated he knew prior to the interrogation the offenses had been committed by young men with motorcycles and he knew defendant owned a motorcycle. He had been told defendant and another youth were near the burglarized home riding their motorcycles at the time the burglary was supposed to have been committed. Defendant and this other youth had also been in the field riding their motorcycles at the time of an arson of a construction trailer. This other youth was never called to the station for interrogation. On cross-examination Officer Kuntz testified defendant was not under arrest when he was interrogated and he based his opinion on the fact no one had told him defendant was under arrest. He stated he would not think a young man being questioned in a room by two police officers behind a closed door after being informed of his rights was under arrest, but he could not name one other person who had been questioned in such a manner who was not under arrest. He then admitted he never really stopped to consider whether defendant was under arrest. On redirect he stated it was the booking process he viewed as constituting an arrest.

I believe the record clearly supports the conclusion defendant was under arrest at the commencement of the interrogation. Both the police officers' testimony, and in particular their conduct toward defendant, support this conclusion. Accordingly, the judgment of the circuit court of Will County should have been reversed.