THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL ALFRED KRUEGER, Defendant-Appellant.

Second District    No. 78-73

Opinion filed August 16, 1979.

Mary Robinson, of State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

Defendant, Michael Alfred Krueger, was convicted of murder (Ill. Rev. Stat. 1975, ch. 38, par. 9—1) after a jury trial and was sentenced to 20 to 50 years imprisonment. The issues on appeal are whether the trial court erred in denying defendant's motion to suppress statements and in excluding evidence of the victim's sexual propensities.

The relevant facts may be summarized as follows: Defendant was charged by information with the August 28, 1976, murder of James Finnegan and, before trial, he moved to suppress oral and written statements he had given police officers after his arrest. He contended he was denied the right to counsel when the statements were made. At the hearing of defendant's motion, three Rockford police detectives testified defendant had been arrested on November 4, 1976, on the basis of information supplied by his girlfriend. He was advised of his *Miranda* rights and signed a rights waiver form. The officers initially questioned him about an unrelated burglary, and defendant gave a written inculpatory statement relating to that offense. When the officers then asked him about the Finnegan homicide, Detective Otwell testified, defendant said, "Hey, you're trying to pin a murder on me. Maybe I need a lawyer." Detective Donnelli stated defendant said, "Wait a minute. Maybe I ought to have an attorney. You guys are trying to pin a murder rap on me, give me twenty to forty years." Detective Galvanoni testified defendant said, "Just a minute. That's a twenty to forty years sentence. Maybe I ought to talk to an attorney." Detective Otwell then told defendant they didn't know whether it was a murder; only two people knew what had happened and one of them was dead. Defendant then asked the officers how they knew it wasn't self-defense and when they said they didn't know, defendant told them about his altercation with the deceased and signed a written statement in which he admitted stabbing Finnegan but claimed it was in self-defense. The next day the officers again questioned defendant; he stated he understood his rights and gave an oral statement regarding the stabbing.

Defendant testified at the hearing of his motion to suppress that when the officers asked him about the person he had stabbed on Market Street he told them he thought he should talk to an attorney but they continued

to question him and he got the idea they didn't hear him ask for a lawyer. On cross-examination defendant testified he continued to talk because he thought it would do no good to keep asking for an attorney and he didn't want to be up all night being "badgered" by the three detectives. He also testified he continued talking to them

"* * * [b]ecause I believed it was self-defense. I still do. They wanted a statement of what happened to clear it up. I wanted to get it off my chest, so I gave them a statement.

[Assistant State's Attorney]: But you know you had a right to have an attorney there if you wanted one, didn't you?

[Defendant]: Yes, I did."

The trial court denied defendant's motion to suppress.

On the first day of trial the State made a motion in limine to prevent defendant from presenting evidence regarding Finnegan's aggressive homosexual tendencies unless he also presented evidence they were known to defendant prior to the stabbing. The trial court ruled that defendant could not cross-examine the State's witnesses concerning such tendencies, but could later recall those witnesses if a sufficient foundation for the admission of such evidence was laid.

At trial the State introduced the testimony of the three detectives together with defendant's written statement in which he stated Finnegan had approached him near a bar where defendant had been drinking and defendant got into Finnegan's car. While they were driving Finnegan made several homosexual advances toward defendant which he resisted but when Finnegan forcefully continued his efforts defendant pulled out a knife and in a struggle for it Finnegan was stabbed. The car in which they were riding swerved and ran into a building; defendant ran from the scene. He told the officers he did not intend to rob Finnegan. Sharon Sularz, defendant's girlfriend, testified defendant told her that Finnegan made homosexual advances, which defendant resisted, and that defendant demanded Finnegan's wallet. Defendant also told her Finnegan said he had no money and hit defendant in the mouth and, as they struggled, defendant stabbed Finnegan.

At the close of the State's case defense counsel sought to introduce evidence of the victim's reputation for aggressive sexual behavior through the testimony of the victim's roommate, who would testify the victim often picked up strange men on the street for sexual activity and had an extremely strong sex drive. The trial court reserved ruling until after defendant testified.

Defendant's testimony was substantially the same as his earlier statement to police. He did not testify he had any prior acquaintance with Finnegan or that he had previously heard anything about him. The trial court then refused defense counsel's request to call two witnesses to

testify concerning Finnegan's reputation for aggressive sexual behavior on the ground it was not known to defendant and it was not evidence of a violent character which could have influenced defendant's conduct.

■■ Defendant's first contention on appeal is that the trial court erred in denying his pretrial motion to suppress his oral and written statements. He argues they were obtained through interrogation which was continued after he requested counsel and for that reason should have been suppressed in accordance with *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. In *Miranda* the Supreme Court held that statements made by a defendant during custodial interrogation may not be admitted in evidence against him unless the State demonstrated the use of procedural safeguards to secure defendant's privilege against self-incrimination. Under *Miranda,* prior to questioning, the accused must be told he has the right to the presence of an attorney and if "he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." (384 U.S. 436, 444-45, 16 L. Ed. 2d 694, 707, 86 S. Ct. 1602, 1612.) Defendant argues his suggestion to police that perhaps he should speak to an attorney constituted a sufficient indication under *Miranda* that he wished to consult with an attorney before speaking and, therefore, statements made by him to police after this "request" must be suppressed. We do not agree.

Defendant in the case at bar did not invoke his right to the presence of an attorney. Under *Miranda* if "the individual states that he wants an attorney, the interrogation must cease until an attorney is present." (384 U.S. 436, 474, 16 L. Ed. 2d 694, 723, 86 S. Ct. 1602, 1628.) Defendant did not state he wanted an attorney but suggested only that "maybe" he should talk to one. We do not find that this ambiguous statement by defendant can alone serve as a communication to the interrogating officers that he wanted his attorney present before any further questioning could take place.

The Supreme Court has not determined whether a suggestion by a defendant that he might want an attorney constitutes a request for counsel under *Miranda.* In *Frazier v. Cupp* (1969), 394 U.S. 731, 22 L. Ed. 2d 684, 89 S. Ct. 1420, a case tried prior to *Miranda* to which the *Miranda* precepts did not apply, the court held that the defendant, who had told officers he thought he had better get a lawyer before talking further because he would get into more trouble than he was in already, had not made a request for counsel under *Escobedo v. Illinois* (1964), 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, sufficient to require the police to cease their interrogation. The court held that, while it did not determine whether the ambiguous comment of defendant would be sufficient under *Miranda* if it were applicable, it was insufficient under *Escobedo* to require the officers to cease their interrogation of defendant.

The Illinois courts have similarly not answered the precise question before us in this case. In *People v. Mrozek* (1977), 52 Ill. App. 3d 500, 367 N.E.2d 783, the court found defendant's statement to detectives that "maybe" he should see a lawyer might be construed as a "red light" to further questioning but found it did not need to decide the question as the defendant in *Mrozek* had also made an unambiguous request for counsel, knowledge of which the court imputed to the interrogating officers. 52 Ill. App. 3d 500, 507-08, 367 N.E.2d 783, 788.

*People v. Washington* (1977), 68 Ill. 2d 186, 369 N.E.2d 57, *cert. denied* (1978), 435 U.S. 981, 56 L. Ed. 2d 72, 98 S. Ct. 1631, and *People v. Rafac* (1977), 51 Ill. App. 3d 1, 364 N.E.2d 991, relied upon by defendant, may both be distinguished on their facts from the case at bar. In *Washington* the defendant asked the interrogating officers for a public defender and was told one could only be appointed by the court; he then attempted to telephone a public defender several times but was unsuccessful. Interrogation continued intermittently while defendant tried unsuccessfully to reach an attorney, and he later made an inculpatory statement which the court determined would be suppressed because defendant had not made a knowing and intelligent waiver of his privilege against self-incrimination and his right to counsel. (68 Ill. 2d 186, 194, 369 N.E.2d 57, 60.) In *Rafac* defendant asked the officers how he could be represented by counsel and was told the public defender could be appointed when defendant went to court. Defendant then asked what the chances were he would receive probation; the officers replied that the court "looked favorably upon cooperation" and thereafter obtained a statement from Rafac. The appellate court determined defendant's indication of "interest" in having legal counsel should have served as a "red light" compelling the interrogating officers to cease their inquiry of defendant. (51 Ill. App. 3d 1, 4, 364 N.E.2d 991, 993.) The comment by defendant in the instant case that "maybe" he should talk to a lawyer because he thought the officers were attempting to implicate him in a murder was not an expression of a wish to consult with an attorney consistent with *Rafac* and *Washington*.

Nor do we agree with the reasoning of the court in *People v. Munoz* (1978), 83 Cal. App. 3d 993, 148 Cal. Rptr. 165, which held that the statement of defendant that maybe he should talk to his attorney constituted an indication under *Miranda* that defendant wished to consult with an attorney which precluded the use in trial of a subsequent confession.

Defendant's ambiguous reference to counsel could not reasonably have been taken by the officers as a request to consult with an attorney before speaking further to them. We also note the officers did not attempt to dissuade defendant from speaking to an attorney but merely answered

defendant's questions as he asked them. Defendant testified he believed it was a case of self-defense and he wanted to get it off his chest; he had an exculpatory story he wanted to communicate to the officers. We conclude the trial court correctly declined to suppress the oral and written statements made by defendant.

■■ Defendant's second contention is that the trial court erred in excluding proffered evidence of Finnegan's sexual propensities with which he sought to bolster his assertion of self-defense. Specific acts of violence on the part of the deceased, if known to defendant, are admissible to show the reasonableness of defendant's apprehension of danger. (*People v. Adams* (1979), 71 Ill. App. 3d 70, 388 N.E.2d 1326.) The offers of proof made by defendant in the case at bar, however, would not have proved a reputation for violence or a violent character as defendant asserts. At best the excluded testimony would have shown that Finnegan was an active homosexual with a reputation for picking up men with whom he was not acquainted for homosexual activity. The proffered testimony did not relate to Finnegan's violent character nor was there testimony that defendant knew of his reputation for such behavior. The trial court correctly excluded testimony regarding Finnegan's sexual propensities.

For the reasons stated the judgment of the Circuit Court of Winnebago County is affirmed.

Affirmed.

GUILD, P. J., and SEIDENFELD, J., concur.