THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LINDA MONTGOMERY, Defendant-Appellant.

First District (2nd Division)   No. 86—2007

Opinion filed February 7, 1989.

Paul P. Biebel, Jr., Public Defender, of Chicago (Julie A. Hull and Donald Honchell, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry, Kim Novi, and Jerry D. Bischoff, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Following a bench trial, defendant was convicted of mob action and sentenced to one year's conditional discharge, $100 fine and $30 in court costs. She appeals, arguing that her conduct is not punishable by the mob action statute.

At trial, the State presented two witnesses. Chicago police officer Dennis Palasz testified that on April 27, 1986, as he and his partner were driving an unmarked car west on Armitage Avenue, they were flagged down by a man standing at the corner of Armitage and Milwaukee Avenues near a White Castle restaurant. The

man, Mr. Toledo, informed Officer Palasz and his partner that he had been in a fight with Daniel Pacheco. As another patrol car arrived, Toledo began hyperventilating and the recently arrived officers went to his assistance, while Palasz placed Pacheco under arrest, handcuffed him and placed him in the patrol car. Meanwhile, approximately 20 to 25 people had gathered, prompting Palasz to call for an assistance car. He radioed the dispatcher and reported "there is nothing wrong," although he heard a woman screaming "fucking police, you fucking assholes, you're a bunch of drunks, what the fuck are you doing, you fucking junkies." At trial, Palasz identified defendant as the person shouting these epithets. As Palasz turned toward the restaurant he saw Lieutenant Kijowski and defendant screaming at each other, after which defendant struck Kijowski on the chest with her hand. Palasz went to assist Kijowski, who directed him to place defendant under arrest. He testified that he did not see defendant's companion, Gail Scanlon, do anything, nor did he hear her say anything. On cross-examination, Palasz stated that the crowd was merely watching what was going on and that "nobody walked toward us." He also acknowledged that he did not include in his police report the fact that defendant had struck Kijowski.

Kijowski testified that as he approached Toledo in order to calm him down, defendant and Scanlon ran out of the White Castle shouting "in essence *** that all policemen are junkies, drunks and all policemen are no fucking good and they beat up people, and don't let him/them take that man away." Approximately 15 to 20 people exited the restaurant and joined defendant in shouting at the police. Kijowski testified that he approached defendant and said "[G]o back in the restaurant, you don't know what's happening." Defendant refused to leave, and when Toledo's mother began screaming in Spanish, Kijowski told defendant "to cease *** making statements" to Ms. Toledo. Defendant responded "[F]uck you, I ain't doing nothing, I have freedom of speech, I can do what I want." When Kijowski threatened to arrest defendant "if she didn't shut up," defendant "smacked" him in the chest. Defendant was thereupon arrested. Kijowski claimed that defendant interfered with his investigation and arrests, as well as his efforts to clear a back up of approximately 50 to 60 cars on the street.

The trial court denied defendant's motion to dismiss, made at the close of the State's case, in support of which she argued that the State had not proved that she interfered with an arrest or that she had the requisite intent for the offense of mob action. In ruling,

the trial court stated that "arrest means manual capture and transportation." Defendant then testified as follows: while waiting for their food in the White Castle, Gail Scanlon saw the police beating a man. Defendant told Scanlon that this was police business and not to get involved. After getting their food, defendant and Scanlon walked to their car and, defendant testified, she was not watching the police nor did she observe a crowd. When defendant got out of the car to throw away her trash, she saw the police forcing Toledo's head down "on the car" and she heard a woman, later identified as Toledo's mother, screaming in Spanish. At this point defendant said, in a louder than normal speaking voice, "[T]he police were wrong, that's police brutality." As she turned to return to her car, Kijowski ran up behind her, grabbed her hair, pulled her backwards and called her "a fucking nigger bitch." She was then arrested and brought to the police station. While there she accused Kijowski of being drunk and she told Palasz that Kijowski "must be having family problems because he's drunk," to which Palasz responded "[Y]es, he is."

Gail Scanlon also testified that she made the observation to defendant that the police should not beat Toledo, and that defendant answered "that she didn't care if they beat him up or nothing because she didn't particularly care for Mexicans and she liked policemen."

Defendant was charged as follows:

"[Defendant] committed the offense of mob action in that she did interfere with the arrest of another by shouting accusations and threats at Police Officers, and did actively encourage others near her to participate in this interference, causing a large group of persons to assemble around the Officers and hinder their lawful efforts. Ms. Montgomery did also refuse to withdraw from this action upon the lawful command of the complainant, a Lieutenant of the Chicago Police Department."

In finding defendant guilty the trial court stated:

"[I]t all comes down to basically whether or not I believe the police officer[s] or whether or not I don't believe the police officers; and whether or not I believe the defendant and her witness, and I don't.

The record will reflect the fact that the Court is quite satisfied with the testimony of the police officers. There will be a finding of guilty and a judgment on the finding. I do not believe *** the defendant and her witness."

OPINION

The mob action statute provides in part as follows:

"Mob action consists of *** (2) [t]he assembly of 2 or more persons to do an unlawful act." Ill. Rev. Stat. 1985, ch. 38, par. 25—1(a)(2).

At trial, defendant argued that the complaint brought against her was deficient because there was no allegation that she had the requisite mental state for the offense of mob action. She also argued that the State failed to prove that she acted with the necessary mental state. On appeal, she abandoned her argument regarding the complaint, but contended that in order to convict her under the statute, the State had to demonstrate beyond a reasonable doubt that she assembled with another in front of the restaurant to knowingly, intentionally or recklessly interfere with an arrest and that she encouraged others to do so as well, and that it failed to do so.

■ A person cannot be guilty " 'of the conduct proscribed by the Mob Action statute unless he intentionally, knowingly, or recklessly engages in such conduct.' " (*People v. Leach* (1972), 3 Ill. App. 3d 389, 393, 279 N.E.2d 450, quoting *Landry v. Daley* (N.D. Ill. 1968), 280 F. Supp. 938, 957, *rev'd on other grounds sub nom. Boyle v. Landry* (1971), 401 U.S. 77, 27 L. Ed. 2d 696, 91 S. Ct. 758.) Defendant's mental state can be inferred from competent circumstantial evidence. *People v. Warship* (1974), 59 Ill. 2d 125, 319 N.E.2d 507; *People v. Zahner* (1979), 77 Ill. App. 3d 706, 396 N.E.2d 593.

■ As the State correctly contends, the judge, who was the trier of fact in this case, could reasonably have concluded that a crowd formed in response to defendant's shouting and joined her in yelling, "[D]on't let him/them take that man away." He could further have inferred that defendant intended or at least knew that her exhortation to the crowd was likely to result in the interference of an arrest.

■ Defendant argues that both Pacheco and Toledo were already arrested at the time she allegedly began shouting, and therefore she could not have interfered with their arrest. An arrest involves three elements: (1) authority to arrest; (2) assertion of that authority with intent to effect an arrest; and (3) restraint of the person to be arrested. (*People v. Howlett* (1971), 1 Ill. App. 3d 906, 909-10, 274 N.E.2d 885.) In determining whether an arrest has taken place, the test is whether a reasonable man, under the same circumstances, would have thought he was arrested. (*Howlett*, 1 Ill. App. 3d at 910.) Here, although Officer Palasz said that both Toledo

and Pacheco were under arrest before defendant began screaming, Lieutenant Kijowski testified that the police were attempting to aid Toledo when defendant began shouting and that she interfered with their investigation and arrests, because they had to keep their eye on her and the crowd as well as the traffic jam in the street. Kijowski acknowledged that Toledo was eventually transported to the police station, where he was given first aid by the fire department.

■■ Defendant was not charged with preventing an arrest, merely interfering with one; therefore, the fact that both Pacheco and Toledo were ultimately arrested does not vitiate a necessary element of defendant's crime. The trial judge heard testimony describing the circumstances surrounding the incident, and could reasonably have found that the police had not yet arrested Toledo when defendant began shouting, and that the disturbance she caused did result in interference with this arrest.

■■ Defendant also argues that the trial judge incorrectly interpreted the mob action statute to apply to speech, rather than conduct, and thus unconstitutionally infringed upon her first amendment right to speech. Defendant does not contend that the mob action statute is unconstitutionally overbroad, as was held in *Landry v. Daley* (N.D. Ill. 1968), 280 F. Supp. 938, *rev'd on other grounds sub nom. Boyle v. Landry* (1971), 401 U.S. 77, 27 L. Ed. 2d 696, 91 S. Ct. 758, only that it is unconstitutional as applied in her case. Here, defendant shouted, "[D]on't let him/them take that man away," thus exhorting the crowd to immediate action. She was not punished for her criticism of the police, but for her unlawful incitement of the crowd to do an unlawful act.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

EGAN, P.J., and HARTMAN, J., concur.