THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. WILLIAM VILLARREAL, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. BRETT E. VILLARREAL, Defendant-Appellee.

Third District   Nos. 3—89—0358, 3—89—0359 cons.

Opinion filed November 27, 1990.

GORMAN, J., concurring in part and dissenting in part.
HEIPLE, P.J., dissenting.

Raymond Kimbell III, State's Attorney, of Galesburg (Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Kenneth D. Brown, of State Appellate Defender's Office, of Ottawa, for appellees.

JUSTICE SCOTT delivered the opinion of the court:
Two cases from the circuit court of Knox County have been consolidated for appeal. Both cases involve the State's appeal from orders of the trial court granting defendants' respective motions to quash arrests and dismiss all charges.

Defendant William Villarreal was charged by criminal complaint with the offenses of resisting a peace officer and obstructing a peace officer. Defendant Brett Villarreal was charged by information with three counts of aggravated battery, two counts of obstructing a peace officer and one count of resisting a peace officer. At the hearing on defendants' consolidated motions to quash arrest and dismiss all charges, the following evidence was presented. On July 15, 1987, both Villarreals, along with James Upson (Upson) and Jeff Curtis (Curtis),

were involved in an incident at the Days Inn Motel in Galesburg, Illinois. As a result, Upson and Curtis were arrested and taken to the public safety building by Officer Thomas Camper (Officer Camper). At least one of the Villarreals accompanied Upson and Curtis to the public safety building whereupon Upson and Curtis received notices to appear and were released.

Shortly after Upson and Curtis were released, Officer Camper received a complaint that Upson had been seen knocking over a motorcycle at the Days Inn Motel. He immediately responded to the call and while approaching the Days Inn observed an off-white vehicle being driven by William Villarreal, and believing that Upson was probably in the vehicle, began following the vehicle. About one-half block from the Villarreal residence, Officer Camper activated his overhead lights. The Villarreal vehicle turned into a driveway, and the four occupants exited the car. Officer Camper, accompanied by Officer Chris Howard (Officer Howard), pulled into the driveway behind them. The four occupants in the car were identified as both Villarreals, Upson and Curtis. The Villarreals resided at that address. By the time the officers pulled into the driveway, the four had already exited the vehicle and were walking towards the front porch of the Villarreal residence. Officer Camper got out of his vehicle and indicated that he wanted to speak to Upson about an incident that had just happened at the Days Inn. The four apparently ignored Officer Camper and kept walking towards the front porch. Sometime when Upson had either entered the front porch or while he was still outside, Officer Camper yelled that Upson was under arrest. Upson, however, continued inside the Villarreal residence. At this point, Officer Camper approached the residence and attempted to gain entry. Both Villarreals resisted by telling Officer Camper that he could not enter their residence without a warrant. Officer Camper indicated that he was in "fresh pursuit" of Upson and was going to enter the residence to effectuate the arrest. A physical confrontation at the front door ensued resulting in Officer Camper pushing his way into the residence. Two other officers arrived on the scene and also entered the residence. No warrant had been issued at this time. The activity moved to the kitchen, where the other two officers arrested Upson, and while removing him, some sort of second altercation occurred resulting in the aggravated battery charges against Brett Villarreal.

At the close of the evidence, the trial court determined that the officers' act of going into the defendants' house against their desire transgressed the defendants' rights under the fourth amendment. Consequently, the trial court granted defendants' respective motions,

dismissed all charges and subsequently denied the State's motion to reconsider.

■■ The procedural issue for review is whether the trial court erred in quashing the arrests of defendants and dismissing all charges. Substantively, the issue is whether the officers' conduct of entering defendants' home without a warrant or without consent to arrest a third party, under the circumstances presented, violated defendants' respective rights under the fourth amendment. The standard for review is whether the trial court's decision is manifestly erroneous. *People v. Jones* (1989), 184 Ill. App. 3d 412, 541 N.E.2d 132; *People v. Stachelek* (1986), 145 Ill. App. 3d 391, 495 N.E.2d 984.

■■ Presumptively, police have no authority to enter a private dwelling to arrest a suspect without first obtaining a proper warrant. (*Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371.) This presumption can be overcome if exigent circumstances are present justifying the police officers' conduct of acting without a warrant. (*Welsh v. Wisconsin* (1984), 466 U.S. 740, 80 L. Ed. 2d 732, 104 S. Ct. 2091; *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371; *People v. Foskey* (1990), 136 Ill. 2d 66.) The State in its reply brief indicates that it is not contending that exigent circumstances justified the officers' conduct and, therefore, we need not further consider this point. The State does, however, argue two theories as authorization for the officers' warrantless entry into defendants' home. First, the State argues that Officer Camper had effectively arrested Upson prior to Upson entering defendants' home and that Officer Camper was therefore authorized to enter defendants' home to complete the arrest. Somewhat intertwined with the first argument, the State also argues that Officer Camper was in "hot pursuit" of Upson at the time of his entry into defendants' home. We note that many courts consider "hot pursuit" to be an exigent circumstance, but for clarity we will treat it separately herein.

■■ ■ An arrest involves three elements: (1) authority to arrest; (2) an assertion of that authority with the intent to affect an arrest; and (3) restraint of the person to be arrested (*People v. Montgomery* (1989), 179 Ill. App. 3d 330, 534 N.E.2d 651), and there is no question that warrantless arrests can be made for misdemeanor offenses. (*People v. Olson* (1983), 112 Ill. App. 3d 20, 444 N.E.2d 1147.) The State, without citing authority, concludes that the arrest of Upson occurred while Upson was in a public place. Although it is arguable that an arrest of Upson may have been set in motion by Officer Camper, clearly under the *Montgomery* analysis, an arrest had not yet been completed. The State, however, argues that under authority of *United*

*States v. Santana* (1976), 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406, Officer Camper was justified in entering defendants' residence to complete the arrest of Upson. In *Santana*, undercover policemen set up a buy of narcotics by giving marked currency to an individual who then went to Santana's house, purchased narcotics and returned. The police then went to Santana's house, where they found her standing in the doorway holding a brown paper bag believed to contain narcotics. When the police pulled up to her residence, they got out and identified themselves, causing Santana to rush into her house with the paper bag. The police gave chase into her home without a warrant and arrested her for selling narcotics. They also searched the paper bag and house and found narcotics as well as recovering some of the previously marked currency. The court determined that the police properly entered Santana's home without a warrant because the arrest had already been set in motion while Santana was in her doorway and the police were in "hot pursuit" since it was reasonable to believe that any delay would result in the destruction of evidence. The court further indicated that Santana could not retreat into her house to thwart an otherwise valid arrest. (*United States v. Santana*, 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406.) We certainly agree with the *Santana* decision, but find it factually distinct from the circumstances of this case. In *Santana*, the person whose privacy interest was being considered was the suspect. In this case, the privacy interests to be considered are those of third persons who were not being sought out for arrest. Moreover, we do not believe that the officers in this case were in "hot pursuit" of Upson. There is no indication that defendants were attempting to elude the officers in their vehicle and, in fact, no traffic citations were issued. Nor is this a situation where evidence would potentially be destroyed or the suspect would potentially elude arrest unless immediate action was taken. There were at least four officers at defendants' home, and the possibility of Upson escaping was at most very slim. The additional burden placed on the police by obtaining a warrant was minimal.

In *Steagald v. United States* (1981), 451 U.S. 204, 68 L. Ed. 2d 38, 101 S. Ct. 1642, the Supreme Court held that absent consent or exigent circumstances, the entry into the home of a third party to arrest a suspect may not be done without first obtaining a proper search warrant. To hold otherwise "would create a significant potential for abuse." (*Steagald*, 451 U.S. 204, 68 L. Ed. 2d 38, 101 S. Ct. 1642.) Having already determined herein that there was no consent, no exigent circumstances and no "hot pursuit," we conclude that the officers' entry into defendants' home transgressed defendants' fourth

amendment rights. Moreover, it is clear that all of the charges against defendants were the result of and occurred subsequent to the officers' unlawful entry into their home. Since there is no other independent evidence upon which to base any of these charges against defendants, they simply cannot stand. Therefore, the decision of the trial court quashing the arrests of defendants and dismissing all counts is affirmed.

Affirmed.

JUSTICE GORMAN, concurring in part and dissenting in part:

I concur that all charges against William Villarreal should be dismissed and that the charges of obstructing and resisting a peace officer against Brett Villarreal should be dismissed. I believe that that is a result required for the reasons stated in the opinion, which addresses the problems raised by the officers' improper entry into the Villarreal home in making the arrest of James Upson.

I disagree, however, that the three counts of aggravated battery against Brett Villarreal should be dismissed. In this case it is uncontested that Brett Villarreal was aware that the men in his house on August 19, 1988, were peace officers. The officers were engaged in an official act, that being the arrest of James Upson. Although Brett Villarreal considered the officers' entry into the Villarreal home to be unlawful, and it was, in fact, unlawful, Brett Villarreal was without justification to use force in attempting to stop the arrest of James Upson. To hold otherwise is to declare open season on peace officers and to encourage, rather than dissuade, remedies of self-help in situations such as this.

In my view there is considerable precedent to support the position that a person may not use force to resist arrest even though the arrest is unlawful. I would suggest that this is true, whether the person is resisting his own arrest, or interfering in the arrest of another. *People v. Taylor* (1983), 112 Ill. App. 3d 3, 444 N.E.2d 822; *People v. Taylor* (1977), 53 Ill. App. 3d 810, 368 N.E.2d 950; *People. v. Gnatz* (1972), 8 Ill. App. 3d 396, 290 N.E.2d 392.

I believe the officer's conduct fits clearly into the language of the aggravated battery statute which is designed to protect him in the execution of his official duties, and I don't believe he loses the protection of the statute, even though his act of making an arrest is after what has been determined to be an unlawful entry into a private home. I believe to hold otherwise is a serious departure from the accepted precedent and would lead to the result that officers who were

mistaken regarding the legality of their acts could be harmed in attempting to execute their duties with impunity without legal consequences being available against obvious wrongdoers.

Accordingly, I would reinstate the aggravated battery charges against Brett Villarreal and remand the matter to the trial court.

PRESIDING JUSTICE HEIPLE, dissenting:

What are the simple facts of this simple case? Officer Thomas Camper followed a car to the defendants' residence in order to arrest an occupant of the car, James Upson. The Upson car arrived just ahead of Officer Camper's police car. Upson and the occupants of car one got out. Officer Camper got out of his police car. Upson headed up the sidewalk and towards the house. Officer Camper told him he was under arrest. Upson ignored the officer and went on into the house. Officer Camper and other policemen went on into the house and effectuated the arrest of Upson. In the process of this arrest, the defendants William and Brett Villarreal, who lived in the house, attempted to interfere with the arrest of Upson. The two defendants first blocked the officers' entry into the house. Brett Villarreal also struck Officer Camper in the face with his fist and threw an ice chest at Officer Chris Howard.

In these consolidated appeals, defendant William Villarreal was charged with offenses of resisting a peace officer and obstructing a peace officer. Defendant Brett Villarreal was charged with three counts of aggravated battery, resisting a peace officer, and two counts of obstructing a peace officer. The trial court granted defendants' motions to quash arrest and dismissed all charges against both defendants, finding that the police officers' act of going into the Villarreal residence without a warrant and without the defendants' consent violated the defendants' rights under the fourth amendment.

Justice Scott would affirm the entire dismissal. Justice Gorman would affirm the dismissals except as to the single charge of aggravated battery against Brett Villarreal. I would reverse the trial court's ruling in its entirety and remand the case for a hearing on the merits.

Police officers have been conferred by law with authority to make arrests, and the act of making an arrest is authorized to the extent that a person may not use force to resist or obstruct an arrest even though the arrest may be unlawful. (Ill. Rev. Stat. 1989, ch. 38, par. 107—7.) Here, the officer informed Upson, in the presence of the defendants, that he was under arrest before Upson retreated into the defendants' residence. Thus, the defendants were fully aware that the

men attempting to enter their home were police officers engaged in the official act of arresting James Upson.

The question raised by the defendants' motions to quash and dismiss is not whether the police officers should have obtained a warrant. The question is, rather, whether the defendants, or either of them, had a right to physically resist and obstruct the officers' efforts to effect an arrest upon a third party, James Upson. The defendants had no such right. Consequently, the trial court erred in granting the motions to quash and dismiss. And, the majority of this court is wrong in dismissing any or all of those charges against these two defendants.

What we have here is a situation where the trial judge and two members of this court do not like the police officers' conduct in pushing their way into a private residence without a warrant to make an arrest of a third party. Whether one sympathizes or even agrees with such feelings, the rule of law is not to be abrogated by visceral feelings and emotions. The discussions by Justices Scott and Gorman do not change the reality of what happened here nor the rule of law applicable thereto. The trial court should be reversed in its entirety and the cause remanded for a trial on the merits.